# MOUNT AIRY MILLING AND GRAIN COMPANY *vs.* CHARLES A. RUNKLES.

*Contracts: breach; liquidated damages; part performance. Good will: competing in same business.*

In a contract the statement of the parties as to liquidated damages is generally regarded as a penalty unless the contrary intention is unequivocally expressed, so that harsh provisions will be avoided and compensation alone be awarded.    p. 376

Provisions in a contract for the payment of a sum of money as liquidated damages for the nonperformance of a contract should not be enforced when the payments specified could not possibly have formed a genuine pre-estimate of the creditor's possible or probable interest in the performance of the principal obligation.             p. 378

Where such an agreement has been partially performed, it is the policy of Courts to regard the damages as a penalty and allow the plaintiff to recover only such damages as he has actually sustained.                    pp. 378-379

A. by a written agreement gave B. an option on his flour mill, elevators, etc., and certain other properties all set out in detail, for the consideration of $12,500.00. B. exercised the option and A. gave him a certificate to that effect agreeing to execute a deed for the property when B. should give

372 MT. AIRY MILLING, Etc., CO. vs. RUNKLES.

Syllabus.                                    [118

collateral to secure the purchase money notes; in the original
agreement there had been no mention of "good will" nor any
restriction against A.'s going into the same business again;
but without additional consideration, the certificate recited
that for the consideration aforesaid A. agreed not to go in the
same business for five years, near the same place under a pen-
alty of $6,250; within a few months of the expiration of the
five years, A. resumed business again at the same place; in a
suit brought by B. to recover the $6,250, *it was held* that in
view of all the circumstances it would be unconscionable to
hold and declare such a sum to be liquidated damages in
such a case of part performance.                    p. 379

While B. in his action for the recovery of the sum named as
liquidated damages might have recovered actual damage had
he amended his declaration; as he did not do so, *it was held,*
that he must abide the result of standing on the pleadings.
                                                    p. 379

*Decided June 13th, 1912.*

Appeal from the Circuit Court for Montgomery County
(Peter, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Pearce, Burke, Thomas, Pattison, Urner and Stock-
bridge, JJ.

*Charles W. Prettyman* (with whom was *Hattersley W.
Talbott* on the brief), for the appellant.

*Guy W. Steele,* for the appellee.

Pearce, J., delivered the opinion of the Court.

There is but one question in this case, viz, whether the
sum named in a contract for the sale of certain property,
though stated therein to be liquidated damages for a breach

of one of the terms of the contract, was so in fact, or was merely a penalty.

The facts of the case are as follows: On February 5th, 1906, the appellee, Charles A. Runkles, owned and operated a grain elevator and flouring mill at Mount Airy, Carroll County, Md., and Charles C. Gorsuch at that time was engaged in the same business at Westminster in the same county. On the date above named Runkles gave to Gorsuch a ten-day option for the purchase of the above property, described therein as "my flouring mill plant, grain elevator, warehouse and office, and all the roads, rights, ways, waters, and privileges thereto belonging or appertaining, in Mount Airy, in Carroll Co., Md., also my one-half interest in the water works connected with said flouring mill plant, including the lot of ground upon which the said plant, elevator, warehouse and office are located, at and for the sum of twelve thousand five hundred dollars, to be paid for by said Charles C. Gorsuch, in the event of his exercising his right to purchase the above described property, as follows." Then follow the terms, which it is not necessary to set out, as they have been fully complied with and in no wise affect the question here. The option makes no reference to the sale of the good will of the concern, nor to any restriction upon Runkles' right to go into the same business at Mount Airy. On February 15th, 1906, Gorsuch exercised his right of purchase, and Runkles signed and delivered to Gorsuch a paper of that date certifying to that fact, as well as to the payment of the cash stipulated to be paid by the option, and the delivery of the notes for the residue of the purchase money, and binding himself to execute and deliver a conveyance, upon the delivery by Gorsuch to him of certain collateral security for said notes as stipulated in said option.

This paper also contained the following clause: "and for the consideration aforesaid, I hereby agree not to go into the same business hereby transferred for five years, at or near Mount Airy, under a penalty of $6,200 as liquidated dam-

ages. Witness my hand and seal this 15th day of February, 1906."

Subsequently, Gorsuch assigned all his interest under said contract to the Mount Airy Milling and Grain Company, a corporation which the said option showed was to be formed for carrying on said business, and whose bonds were to be, and in fact were, delivered to Runkles as collateral security for the notes of Gorsuch, and this suit was brought by that corporation. The *narr.* contained only one count, with all the necessary averments as to the terms of the contract, and alleging as the breach thereof that on or about October 22nd, 1909, the defendant did go into the same business transferred to Gorsuch at Mount Airy, and continued therein up to the bringing of that suit within a few hundred feet of the plant so sold to said Gorsuch, and then owned by the plaintiff, to the great damage and injury of the plaintiff. It averred that the defendant had not paid the plaintiff nor the said Gorsuch the said sum of $6,200, and claimed therefor said sum of $6,200 as liquidated damages. The defendant pleaded, first, never indebted as alleged; second, never promised as alleged; third, for defense on equitable grounds "that the alleged contract in writing is without any valuable consideration"; fourth, "for defense on equitable grounds that the alleged contract in writing was not based upon any valuable consideration, and the contract of purchase of defendant's flouring mill and appurtenances, as alleged in the declaration, for the sum of $12,500, was fully entered into and completed, and did not include the promise of the defendant not to go into the same business as alleged, and such promise was voluntarily made, and without any valuable consideration being received therefor by the defendant."

Issue was joined on the first and second pleas, and motion *ne recipiatur* as to the third and fourth pleas was filed on the ground that under the circumstances of the case they were not proper pleas for defense on equitable grounds. This motion being overruled, the plaintiff demurred to the third

and four pleas, and the demurrer was sustained. The case then went to trial on the issues already joined and resulted in a verdict and judgment thereon for the defendant, from which this appeal is brought.

It appears from the evidence of Thomas Watkins that in the summer of 1909 the defendant was farming near Mount Airy, and that in a conversation between them witness told him he heard he was going again into the grain business, and witness asked him if he had the nerve to go into the business, and that he replied he had both the nerve and the money. It was also shown that on September 21st, 1909, a corporation was formed by Edward M. Molesworth, Charles A. Runkles, the defendant, and Albert H. Runkles, by the name of the Mount Airy Lumber and Grain Company, which was authorized by its charter to buy and sell grain and manufacture flour and other grain products, and had been engaged in that business at Mount Airy directly across the road from the plaintiff's plant, buying grain since July, 1910, and manufacturing flour and other grain products since December, 1910, down to February 15th, 1911, which marked the period of five years from the date of said contract, and that defendant was and always had been an officer and stockholder of the Mount Airy Lumber and Milling Company, whose capital stock was $25,000. The defendant offered no testimony, but offered the three following prayers:

*First*—That there was no evidence offered legally sufficient to entitle the plaintiff to recover.

*Second*—That under the pleadings the plaintiff has offered no evidence legally sufficient to establish or prove any damages suffered by it, and if the verdict of the jury is for the plaintiff, they can allow only nominal damages.

*Third*—That under the pleadings the plaintiff has offered no evidence legally sufficient to enable it to recover, and therefore the verdict of the jury must be for the defendant.

The defendant's first and second prayers being rejected, the third prayer above remains for consideration, which raises

the single question in this appeal, viz, namely, whether the $6,200 is to be construed as liquidated damages, or as a mere penalty.

It is conceded that this question is very frequently one of the most difficult and perplexing inquiries encountered in the construction of written agreements. Let us see, therefore, how far the general principles controlling this question have been established in this State. In *Willson* v. *Mayor and City Council,* 83 Md. 211, Chief Judge McSherry said:

"There are to be found both decisions and dicta that are conflicting and irreconcilable; but the general principles which are usually invoked, and which are peculiar to contracts of this character, are nowhere seriously disputed or denied. As just compensation for the injury done is the end which the law aims to reach, the intention of the parties at the time the contract was entered into is often, thought not always, given weight; and whilst the language which they have used in the instrument, if they declare that the damages shall be liquidated, is a circumstance that may have its influence; yet even then explicit words will sometimes be disregarded, and the measure of damages will be restricted to such as the evidence shows have been actually sustained, if the entire agreement, and the peculiar circumstances of the subject-matter of the contract indicate that the reason and justice of the case require this to be done. * * * A stipulation to pay a specified sum upon the non-performance of a contract, is regarded as a penalty, rather than as liquidated damages, if the intention of the parties as to its effect, is at all doubtful, or is of equivocal interpretation. * * * Finally the tendency of late years has been to regard the statements of the parties as to liquidated damages in the light of a penalty unless the contrary intention is unequivocally expressed, so that harsh provisions will be avoided, and compensation alone will be awarded." Idem, 212.

Looking into the record with these established principles in view, we find that while the plant and all its appurtenances are minutely described in the option, separately and apart from the lot of ground upon which the buildings stand, as also the half-interest in the water-works connected with the plant, for the aggregate consideration of $12,500, there is no mention of any good will of the property sold. By agreement of counsel, the original of the certificate which contains the restriction upon the resumption of business, and which was in evidence in the Court below, was exhibited at the argument in this Court, and it was plainly apparent therefrom that this clause was not a part of the paper as originally prepared, but was inserted between the preceding paragraph and the attestation clause. It is not possible in the light of that fact (there being no explanatory evidence) to regard this as other than an after-thought, and as imposing upon the appellant the burden of showing that its addition to the certificate was made with the intelligent and deliberate purpose of the parties, to add to the original contract a provision fixing the sum named as the measure of damages for a breach of that clause of the certificate. In *Tayloe* v. *Sandiford,* 7 Wheaton, 13, CHIEF JUSTICE MARSHALL, speaking of a sum of money in gross for the non-performance of an agreement, said: "It will not, as of course, be considered as liquidated damages, and it will be incumbent on the party who claims it as such, to show that they were so considered by the contracting parties."

In 2 *Greenleaf on Evidence,* sec. 259, the rule is said to be that "it must be apparent that the damages have already been the subject of actual and fair consideration and adjustment between the parties." No attempt has been made to comply with this requirement.

In *Clydebank Engineering Co.* v. *Don Jose Ramos,* 1905 Appeal Cases, N. S. 6, LORD JUSTICE DAVY said: "Courts should refuse to enforce performance of such an obligation when the payments specified could not possibly have formed a genuine pre-estimate of the creditor's possible or probable

interest in the performance of the principal obligation;" and this was said in a case where the damages were graduated at so much per week for delay in delivery as ship builders, a class of cases in which liquidated damages are most frequently enforced. They were enforced in that case, but only because of the peculiar importance of prompt delivery and the amounts involved in the contract, but a consideration of all the circumstances of the present case we think will show that $6,200 could not possibly have formed a genuine pre-estimate of the interest of the appellant in the observance by the appellee of this clause of the contract. The property and rights combined as described in the option and in the certificate were in the aggregate valued at $12,500. The consideration stated for the agreement not to resume business within five years was "the consideration aforesaid," that is the $12,500 already declared to be the consideration for the property and rights purchased apart from any good will. There was no superadded consideration for the good will for the period of five years, as there might have been, and naturally would have been, if the parties designed to fix that large sum finally as the measure of damages for breach of resumption of business during that period. It cannot be contended that $6,200, so much of the $12,500, was settled upon as the value of the good will, because this would leave but $6,300 as the value of the property and rights which they had already valued at $12,500.

If the damages in this case should be held to be liquidated, the effect would have been, in event of a breach occurring the day before the expiration of the five years to allow a recovery of $6,200, when no greater amount could have been allowed for a breach occurring the day after the contract went into operation, and continuing for the whole five years. It is impossible to believe in the absence of positive evidence that the parties designated to establish such a situation. The application of such a principle to a breach occurring near the expiration of the five year period would do gross injustice to one party, while its application to a breach occurring early

MT. AIRY MILLING, Etc., CO. vs. RUNKLES. 379

Md.]                    Opinion of the Court.

in the period of restriction might work equal injustice to the other party.

Where the agreement has been partially performed it is the policy of the Courts to regard the damages as a penalty, and allow the plaintiff to recover only such damages as he has actually sustained. 13 *Cyc.* 104; *Shute* v. *Taylor,* 5 Metc. 61. Here the restriction expired February 15th, 1911.

Runkles had a right to prepare for the resumption of business at that date by organizing the corporation as he did, and erecting and equipping his plant. The first breach of this contract was in July, 1910, in buying shipping grain, when the contract was nine-tenths performed, and there was another breach in December, 1910, in commencing the manufacture of flour when but two months of the five years were unexpired. It would be unconscionable to ask, and unreasonable to declare these to be liquidated damages in such a case of part performance. This is a very different situation from that existing in *United Surety Co.* v. *Summers,* 110 Md. 95, relied on by the appellant, where a reasonable sum fixed by the contract as damages for each day's delay beyond the prescribed time for completing a building, was held to be liquidated damages, and was not rendered excessive or unreasonable because of protracted delay on the part of the contractor.

The appellant might, if he had seen proper have amended the *narr.* and claimed for actual damages, but not having done so, he must abide the result of standing upon the pleadings.

For the reasons stated the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee above and below.*