## DAMAGES FOR BREACH OF CONTRACT TO PURCHASE FLOUR.

Court of Appeals for Hamilton County.

DOMESTIC SCIENCE BAKING COMPANY v. SHEFFIELD-KING MILLING COMPANY.

Decided, January 17, 1916.

*Damages—Measure of, in Action for Breach of. Contract to Purchase Specific Personal Property—Provision for Liquidated Damages Must be Treated as a Penalty, When—Evidence Admissible as to the Amount of Damages Actually Sustained.*

In an action under a contract for purchase and sale which has been breached and related to as common and stable an article as flour, a provision for ascertaining the resulting damages by a rule which would give an amount greater in excess of what was actually suffered must be treated as a penalty to be imposed rather than as liquidated damages, and the defendant in such a case should be permitted to show all the circumstances surrounding the making of the contract which would tend to disclose the real loss sustained.

*W. A. Rinckhoff, Murray Seasongood* and *Robert P. Goldman,* for plaintiff in error.

*Stanley K. Henshaw, E. R. Donohue* and *H. L. Hoidale,* contra.

GORMAN, J.

On the 5th of August, 1912, the parties hereto entered into a contract whereby the defendant in error agreed in writing to deliver f.o.b. the cars at Faribault, Minnesota, four thousand barrels of flour of one hundred and ninety-six pounds each, the defendant in error, the seller, to pay the freight from Faribault to Cincinnati. The flour was to be packed in jute bags of one hundred and forty pounds each. The price of the flour was $4.75 per barrel at Faribault. The deliveries were to be made between October 1, 1912, and March 1, 1913, via C., H. & D. Railroad. Payment was to be by draft with bill of lading attached, to be paid through the Market National Bank of Cincinnati. Shipments were to be made upon the order of the ven-

dee, the Domestic Science Baking Company.

The contract provided for damages which should be payable by the vendee in case of breach. In substance it was agreed in the contract to sell that—

"If the buyer fails to furnish directions for shipment within original contract time or prior to the date of expiration of extension, seller may, (1) extend contract limit thirty days, subject to carrying charges  *  *  *;  (2) ship the goods at his option within thirty days  *  *  *;  or (3) terminate contract, in which case the following is agreed upon as the basis of settlement, viz.: the actual difference between the highest closing price of No. 1 Northern wheat in Minneapolis on date of sale and date of cancellation as shown by the 'Minneapolis Market Record,' figuring four and one-half bushels of wheat for every barrel of flour, the buyer to reimburse the seller for carrying the wheat at the rate of one cent per bushel per month from the date of sale to date of cancellation, plus two cents per bushel for buying and re-selling the wheat, and two cents per bushel to cover loss of profit, if any, and inconvenience to seller resulting from failure of buyer to take out flour as per contract."

There were other terms and conditions in the contract, but these are sufficient to present the questions which arose in this cause in the trial below.

The vendee, the Domestic Science Baking Company, ordered out and received 750 barrels of flour, but refused and neglected to order the remaining 3250 barrels, and refused to give directions therefor and breached the contract.

The action was brought by the defendant in error in the court of common pleas to recover the damages claimed to have been sustained under this contract by reason of the breach of the contract on the part of the plaintiff in error in refusing to order out the remaining barrels of flour.

Upon the trial of the cause below the trial court held that no evidence was admissible to show the market price of flour either at Faribault, Minneapolis, or at Cincinnati, but the parties, in the determination of the amount of damages which might be recovered, were limited to the rule laid down in the contract for determining these damages. Under this rule, allow-

ing the vendor the amount agreed upon under the contract, the damages for the failure to take the 3250 barrels of flour would amount to about $4,400. The Domestic Science Baking Company offered to show the market price of the flour in question at Cincinnati on the date of the breach of the contract, and further offered to show the market price at Faribault, Minnesota. The court refused to allow this to be done, and counsel for plaintiff in error, so the record discloses, stated that if it were permitted to prove the market price of flour at the time and place of delivery, when the breach occurred, the damages to the Sheffield-King Company would not exceed $500. In fact, it was claimed that the evidence would show, if admitted, that there was little or no damage resulting to the plaintiff below.

During the trial the Sheffield-King Milling Company waived its claim of two cents per bushel to cover the loss of profit, and the court instructed the jury to return a verdict in favor of the plaintiff below for $4,185.46, which included interest. If the plaintiff below had not waived its claim of two cents a bushel prospective profits, the amount of the verdict under the instructions of the court would have been nearly $4,500.

Plaintiff in error asks for a reversal of this judgment, upon the ground that the court erred in refusing to permit it to offer evidence tending to show the market value of the flour at the time of the breach and at the place of delivery; and for the further reason that the court refused to permit it to offer evidence tending to show the situation of the parties at the time the contract was entered into and all the surrounding circumstances.

The court below instructed the jury to return a verdict in favor of the plaintiff upon the theory that the provisions of the contract, for liquidation of damages, were agreed upon between the parties, and that no other rule of evidence is admissible to establish damages. The court also held that under the evidence there was no question of the breach of the contract, because the defendant below had refused and neglected to take the remainder of the flour.

We are of the opinion that the judgment should be reversed, and the case remanded for a new trial.

In this state the rule is well established that the measure of damages for the breach of a contract of sale of specific personal property is the difference between the market price and the contract price at the time and place of delivery. Section 844, General Code; *Cullen* v. *Bill,* 37 O. S., 236; *Nixon* v. *Nixon,* 21 O. S., 114; *Smith* v. *Lime Co.,* 57 O. S., 518.

It is true that parties may agree upon a sum as liquidated damages in case of a breach of a contract of this character, but courts will closely scrutinize such agreements for the purpose of determining whether or not the stipulation fixed is a penalty, or correctly represents the damages sought for the breach of the contract and which naturally flow from the breach.

The trial court was of the opinion that the rule laid down in *Doan* v. *Rogan,* 79 O. S., 372, should be applied to the instant case. In that case there was a contract entered into between four partners, and among other provisions of the contract was the following:

"That if either Seth H. Doan, Dudley J. Mahon or Conrad Roth shall sever his connection with the said temporary partnership or said corporation without the consent of Michael J. Rogan and within three years from this date, the person so offending shall pay said Michael J. Rogan the sum of one thousand dollars as liquidated damages."

The Supreme Court held in that case that this was a reasonable provision for liquidated damages, and in the second paragraph of the syllabus the court said:

"Whether a stipulation providing for liquidated damages for the breach of a contract is to be construed as liquidated damages or as a penalty, depends upon the intention of the parties to be gathered from the entire instrument. While courts will not construe contracts in a way authorizing recovery for liquidated damages simply because the parties have used that term in the agreement, yet where parties to a contract otherwise valid have in terms provided that the damages of the injured party by a breach on the part of the other of some particular stipulation, or for a total breach, shall be a certain sum specified as liquidated damages, and it is apparent that damages from such breach would be uncertain as to amount and difficult of proof, and the

contract taken as a whole is not so manifestly unreasonable and disproportionate as to justify the conclusion that it does not truly express the intention of the parties, but is consistent with the conclusion that it was their intention that damages in the amount stated should follow such breach, courts should give effect to the will of the parties as so expressed and enforce that part of the agreement the same as any other.''

It will be noted that in the case just cited the damages would be difficult if not impossible of ascertainment. The amount of damages, if any, which could be recovered would be quite uncertain, and there was nothing unreasonable in providing that $1,000 should be paid as liquidated damages for the breach of the contract under all the circumstances of that case.

But in the case before us, flour is a common article or commodity, bought and sold throughout the length and breadth of the land, in every city, town and hamlet. It is perhaps as common an article of commodity as is bought and sold daily throughout the United States. It is common knowledge that flour has a market value which perhaps may fluctuate from day to day, from week to week, or from month to month, but it has a market value easy of ascertainment, and there is no difficulty in finding out what is the market value of any grade of flour made in any part of United States. If there is no market value at any particular point in the United States, then the market value of flour at the nearest point to that place may be taken and the cost of carriage between that point and the place where the market price is desired to be fixed would determine the market price in the locality where there are no quotations.

It appears to this court that there would have been no difficulty in determining the market value of this flour, either at Faribault, Minnesota, or at Cincinnati, and the excuse for fixing a sum as liquidated damages does not exist in this case. It was not difficult to ascertain the market price. The damages for the breach of the contract would be in no wise uncertain, and it would be entirely unreasonable to allow damages in a case of this kind, which would amount to almost eight times the real damage suffered by the vendor on account of the breach of the contract.

Taking these matters all into consideration. we think the reasonable conclusion to reach is that the construction to be placed upon the language in this contract which undertakes to prescribe a rule for ascertaining the damages, is that it shows a penalty was provided, rather than liquidated damages.

Section 440, in *1 Pomeroy's Equity Jurisprudence,* page 728, in the note, states:

"Whether the sum mentioned shall be construed as a penalty or as liquidated damages is a question of construction on which the court may be aided by circumstances extraneous to the writing. The subject-matter of the contract, the intention of the parties, as well as other facts and circumstances, may be inquired into, although the words are to be taken as proved exclusively by the writing."

The court below should have permitted all evidence to be offered tending to show the situation of the parties at the time this contract was entered into, all the surrounding circumstances, and testimony as to the market value of the flour, and the question should then have been submitted to the jury not as to whether or not this was a penalty, but as to what the real damages were in the case.

In the case of *Mt. Airy Milling Co.* v. *Runckels,* 118 Md., 371, the first paragraph of the syllabus is as follows:

"In a contract the statement of the parties as to liquidated damages is generally regarded as a penalty unless the contrary intention is unequivocally expressed, so that harsh provisions will be avoided and compensation alone awarded."

In *Zenos* v. *Pryor,* 106 N. E. R. (Ind.), 746, the following rule is laid down in the fifth paragraph of the syllabus:

"Where contracts leave in doubt the question whether sums specified therein by the contracting parties to be paid in case of a default are intended as liquidated damages or penalties, the court favors that interpretation which makes such sums penalties."

It appears to the court that there is no reasonable or proper connection between the rule laid down in the contract, for ascer-

taining damages, and the actual damages that would result from a breach of the contract for the sale of the flour. Wheat was taken as the basis upon which to calculate the damages. Why not flour? Flour is just as common a commodity as wheat in the market, and the market price is just as easily ascertainable as that of wheat.

We do not deem it necessary to multiply authorities in support of the conclusion we have reached, that the provision for the ascertainment of damages in the contract under consideration shows that a penalty was to be imposed, rather than liquidated damages. Counsel for defendant in error have been specially diligent in citing numerous authorities in support of the contention that the ruling of the court below was correct. A brief of more than one hundred and fifty pages was filed with us, in which so many cases are cited that it appears to be an effort to "pile Ossa on Pelion" of adjudicated cases.

Many of these cases grew out of contracts to manufacture and sell certain articles, in which the measure of damages was difficult of ascertainment, no market price existing for the articles to be manufactured and sold. But in all cases in which the article sold was a common stable article sold in the market, having a well known or easily ascertainable market value, and where the parties undertook to fix as liquidated damages a sum largely in excess of the difference between the market price and the contract price, the cases have universally held that such stipulation would be treated as a penalty, rather than as liquidated damages.

We think substantial justice requires that the judgment in this case be reversed and the cause remanded to the court of common pleas for a new trial, so that the plaintiff in error may have an opportunity to show all the facts and circumstances surrounding the making of the contract, to show the market price of the flour at the time of the breach at the place of delivery, and all other facts and circumstances which would tend to show the real damage or loss that was sustained, if any, by the defendant in error.

Judgment reversed and cause remanded.

Jones (E. H.), P. J., and Jones (Oliver B.), J., concur.