899 A.2d 940

**WILLARD PACKAGING COMPANY, INC.**

v.

**Demetrio I. JAVIER.**

No. 2097, Sept. Term, 2004.

Court of Special Appeals of Maryland.

June 1, 2006.

Philip R. Murray, Wheaton, for appellant.

William M. Krulak, Jr. (Rachel T. McGuckian, Miles & Stockbridge, on brief), Baltimore, for appellee.

Panel SALMON, SHARER, and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned) JJ.

SHARER, J.

Appellant, Willard Packaging Company ("Willard"), and appellee, Demetrio Javier, formerly enjoyed an amicable employer-employee relationship. After Javier left Willard's employment, Willard filed a breach of contract action in the Circuit Court for Montgomery County seeking to recover liquidated damages based upon the terms of an employment contract.

After a bench trial, the circuit court awarded appellant nominal damages of one dollar, rejecting appellant's argument that it was entitled to liquidated damages of $50,000 pursuant

to the terms of an employment contract. Disaffected with its Pyrrhic victory, appellant has noted this appeal, raising a single issue:[1]

Whether the circuit court erred in failing to uphold the entire contract, duty of confidentiality and covenant not to compete, where the court found that the contract was valid, that the Appellee had breached the noncompetition clause of the agreement, but rejected the agreed upon liquidated damage clause and awarded a nominal sum of one ($1.00) dollar.

For the reasons discussed, we shall affirm the circuit court's judgment.

## FACTUAL BACKGROUND

Willard is a Maryland corporation that manufactures and distributes packaging materials, including corrugated boxes, bubble wrap, tape, and foam packaging throughout Virginia, Maryland, the District of Columbia, and Delaware. In March 1998, Dana Salkeld, one of the owners of Willard, and also its president, hired Javier to be an outside salesman for the company. This position entailed pursuing established leads, as well as cold calling, to generate sales to businesses needing corrugated boxes or packaging materials. Javier began as a salaried employee and remained as such for approximately two and one half years. Ultimately, Javier began to be compensated by commission, resulting in a decrease in his earnings, precipitating his departure from Willard and subsequent employment with a Willard competitor.

### Duty of Confidentiality and Covenant Not to Compete

On June 19, 1998, shortly after being hired by Willard, Javier was called to a sales meeting held by its owners. At this meeting, which was also attended by senior staff, and other personnel, the sales staff, including Javier, was present-

---

1. Appellee has noted one issue on cross-appeal, which we address, without deciding, *infra*.

ed with a document entitled "Duty of Confidentiality and Covenant Not to Compete" ("contract"). As its title implies, the contract included a restrictive covenant prohibiting Javier from working for a competing business within a 75–mile radius of Willard's principal place of business for one year after leaving Willard's employ, subject to a liquidated damages provision of $50,000 in the event of a breach.[2]

---

2. The contract provided, in pertinent part, for the following:

I agree that for the one-year period immediately following my termination of employment for any reason from Willard Packaging Company, I will:

(1) Not compete, directly or indirectly, either as an officer, agent, director, employee, partner, salesperson or representative, or in any other capacity, in the business of selling packaging or paper products, or other related products within a 75 mile radius of the headquarters of Willard Packaging Company in Gaithersburg, Maryland. The term compete in this agreement shall include, but not be limited to, selling, consulting, brokering, or assisting in the sale, consultation, or brokerage of such products.

\* \* \*

(3) Not compete with Willard Packaging COmpany [sic] or engage, either directly or indirectly, in the sale or solicitation for sale, of packaging or paper products or other related products sold by Willard Packaging Company with any customers of Willard Packaging Company, whether as a result of my solicitation or otherwise. The term "customer" in this agreement shall mean any person or entity who has ever had an account with Willard Packaging Company, up to and including the date of my termination. Also, I shall not be an officer, agent, director, employee, partner, salesperson, or owner for or of any entity which competes with customers, as herein defined, with Willard Packaging Company.

I agree that (a) the above Covenants Not To Compete do not preclude me from engaging in gainful employment or from making a living, and (b) such covenants not to compete are reasonable in duration, area, extent and in all other regards.

I understand that if I breach this Covenant Not To Compete, the injury to Willard Packaging Company will be irreparable and substantial. I also realize that litigation is expensive and time consuming. *Therefore, I agree to pay unto Willard Packaging Company the sum of $50,000.00 as and for liquidated damages, and not as a penalty, in the event that I breach any of the above Covenants Not To Compete.* I agree that such a sum is a fair and reasonable sum to pay in the event of such a breach and is not unreasonable, harsh or unduly burdensome given the nature of such a breach.

The obligation to pay such liquidated damages does not preclude Willard Packaging Company's other rights it may have against me for

Before those present at the meeting signed the contract, Salkeld read it out loud and informed the employees that if they did not sign their futures at Willard "would not be very bright." Without much objection, Javier and the others then signed the contract and, as consideration, each signator received $50 in cash. At trial, Javier testified that he did not read the contract before signing it, and that he had never subsequently read the restrictive covenant giving rise to this litigation.

## Termination

On April 11, 2003, Javier voluntarily terminated his employment with Willard. Before Javier left, Salkeld conducted an exit interview with him during which Salkeld discussed the provisions of the restrictive covenant. Approximately six months after leaving Willard, after working for other employers and for a time receiving unemployment insurance, Javier took a position with Atlas Alexandria Packaging, LLC ("Atlas"), located in Northern Virginia. Atlas also manufactures and distributes packaging materials, and was a major competitor of Willard in the District of Columbia area market. In mid-October 2003, Salkeld became aware of Javier's employment after placing a call to him at Atlas's offices. We shall set forth additional facts necessary for resolution of the issues below.

## Procedural History

On October 23, 2003, Willard filed a complaint in the circuit court, seeking injunctive relief and damages due to Javier's alleged breach of the restrictive covenant. The circuit court denied appellant's request for injunctive relief on October 24, 2004, and the remaining claims for breach of contract and damages came on for a bench trial on November 9, 2004.

---

such a breach, including as an example only, the right to seek injunctive relief, which other rights the company specifically reserves. (Emphasis added).

At the conclusion of appellant's case, Javier moved for judgment, pursuant to Md. Rule 2–519, claiming that appellant had failed to prove that the $50,000 liquidated damages amount in the restrictive covenant was supported by a reasonable expectation of damages.[3] Thus, the issue before the circuit court was refined to the propriety of the liquidated damages provision of the contract. The court, in a ruling from the bench, granted appellee's motion for judgment, considering all inferences in the light most favorable to appellant. The court ruled that Javier, by taking employment with Atlas within one year and within the 75–mile restriction, was in breach of the restrictive covenant. As to damages, the court ruled that the liquidated damage clause in the contract was not based upon a reasonable expectation of damages, hence it was a penalty, and that Willard had failed to prove any other actual damages. The court awarded nominal damages of one dollar.

In its ruling, the court noted:

The law, generally is, as it applies to this case with respect to liquidated damages, that a contract can contain a provision fixing the amount to be paid in the event of a breach, if the amount so fixed is, in fact, compensation for damages and such an agreement is usually up-held [sic] when entered into in good faith by the parties, where the damages are

---

3. Md. Rule 2–519 provides, in pertinent part:

 (a) **Generally.** A party may move for judgment on any or all of the issues in any action at the close of all the evidence offered by an opposing party, and in a jury trial at the close of the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make a motion by introducing evidence during the presentation of an opposing party's case.

 (b) **Disposition.** When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as a trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

uncertain in nature or amount or are difficult to ascertain and the amount agreed upon is not extravagant and is not unreasonably disproportionate to the damages that would actually result from a breach of contract.

Generally, an order for a provision for liquidated damages of a stated amount on breach of the contract to be considered as a valid liquidated damage clause, it is required that the damages to be anticipated are uncertain in amount or difficult to be proved, as I just said, and that the parties intended to liquidate them in advance and the amount stated is a reasonable one and is not disproportionate to the presumed loss or injuries. In other words, it has to be in reasonable expectation of the damages that were expected to be suffered in the event of a breach of contract. This case, at this point, the Court, of course, is required to review the evidence produced by the plaintiff in light of the most favorable to the plaintiff.[4]

In this case, a contract has been proven. A contract entitled "A Duty of Confidentiality and Covenant Not to Compete." This contract, the language of the contract, essentially, was borrowed, if you will, from a friendly competitor of the plaintiffs, and it was, essentially, word for word, the contract used by Cantwell Cleary, again, a friendly competitor and it is identical enough so that the liquidated damages clause amount of $50,000 was the same as was used by Cantwell Cleary. It was, this Court determines, reasonable and [sic] certain aspects, certainly with respect to the covenant not to compete. It was reasonable as to time and space, with respect to the non-compete provision. It is plaintiff's burden, as I have quoted the law, to prove that the liquidated damage clause bears a reasonable relationship to the damages likely or expected to be incurred.

---

4. Of course, pursuant to Md. Rule 2–519(b), the court, at that juncture, is required to consider the evidence in the light most favorable to the party against whom the motion is made, here appellant. We presume that the trial court misspoke.

This Court determines, based on plaintiff's case, alone, unrebutted at this point, that the plaintiff has proven no damages in this case. The business about the Wilhelm case,[5] that is a completely separate case, it was not the same agreement, it would only involve speculation for this Court to be able to relate that case to this case. I have no idea what happened in that case and what the damages were, what the expenses were. Certainly, litigation expenses to enforce that agreement could not be considered by this Court as damages.

The contract was breached in that the defendant did go to work for a competitor within one year after he left, and that was Atlas Alexandria. The plaintiff also posits that damages have been incurred because when an employee in a salaried position, as defendant was, for the first couple of years, he is not earning money for the company. And then, when he is switched to a commission employee, he even earns less, I believe, the amount goes roughly from $35,000, plus car expenses, to about twenty-two or so thousand, plus six thousand for car expenses. But that comes with the territory, that has no relationship to the breach. While he is working for the plaintiff, whether or not he is earning money for the company has no bearing on damages incurred by the plaintiff when and if the defendant, as he did in this case, leaves within the one year. So those losses, if you will, that the plaintiff experiences are so irrespective of this agreement and this breach of contract and those facts arose prior to and irrespective of this agreement.

So both theories that the plaintiff posits with respect to any damages suffered whatsoever are not supported by the evidence. Therefore, there is no evidence before this Court whatsoever that this liquidated damage clause bears a reasonable expectation to the damages that the plaintiff expected to lose. It is an arbitrary figure. It was taken from the

---

**5.** The *Wilhelm* case refers to earlier litigation between Willard and a former employee who apparently also violated a covenant not to compete.

Cantwell Cleary contract in the opinion of this Court. Based on the plaintiff's evidence and the Court's taking the evidence in a light most favorable to the plaintiff, the $50,000 is not a valid liquidated damages clause, but rather constitutes a penalty and I will grant the motion [for judgment].

Thus, although appellee's motion for judgment was granted, and the court found that the liquidated damages provision constituted a penalty, the court did, in fact, award damages due to a breach of contract.[6] Thereafter the parties' noted their timely appeals.

### Standard of Review

Maryland Rule 8–131(c) provides that,

when an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Further, "[w]hen reviewing a trial court's construction or interpretation of a written contract, we do so as a matter of law." *Nationwide Ins. Cos. v. Rhodes*, 127 Md.App. 231, 235, 732 A.2d 388 (1999). "[T]he determination of whether a particular clause in a contract is to be construed as providing for liquidated damages, or as a penalty, depends on the facts and circumstances in each case and is ordinarily a

---

6. At trial the following exchange took place:

THE COURT: All right, if it helps, without trying the rest of the case, I understand your [appellant's counsel's] point. If there is a breach there have to be some damages. With the concurrence of the [appellee], I will award $1 damages.

APPELLEE'S COUNSEL: I am not going to upset the apple cart on that, but, just one thing, just for counsel, Maryland law states that if the Court determines that—

THE COURT: I am not re-writing the contract, I find a breach—

APPELLEE'S COUNSEL: Right

THE COURT: And I will award $1 damages, with the concurrence of the [appellee].

question of law for the court." *Traylor v. Grafton*, 273 Md. 649, 667, 332 A.2d 651 (1975) (citing *H.J. McGrath Co. v. Wisner*, 189 Md. 260, 264, 55 A.2d 793 (1947)). We noted in *James v. General Motors Corp.*, 74 Md.App. 479, 484–85, 538 A.2d 782 (1988):

> [W]hen ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, in the light most favorable to the party against whom the motion is made. If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied. On the other hand, where the evidence is not such as to generate a jury question, *i.e.*, permits but one conclusion, the question is one of law and the motion must be granted. An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same analysis.

(Internal citations omitted); *see also Wilbur v. Suter*, 126 Md.App. 518, 528, 730 A.2d 693 (1999).

## DISCUSSION

***Whether the circuit court erred in failing to uphold the entire contract, duty of confidentiality and covenant not to compete, where the court found that the contract was valid, that the Appellee had breached the noncompetition clause of the agreement, but rejected the agreed upon liquidated damage clause and awarded a nominal sum of one ($1.00) dollar.***

Appellant has argued that the language of the restrictive covenant was clear and unambiguous, and that the trial court erred in not assessing damages based on the liquidated damage clause of the contract.[7] We agree with the trial court's finding that the liquidated damage clause was not based on a

---

7. Appellant has not appealed the trial court's denial of injunctive relief.

reasonable expectation of damage and was a penalty, thus leading to its award of nominal damages.[8]

 Under the principles of freedom of contract, parties have a broad right to construct the terms of contracts they enter into as they wish, providing the contract is neither illegal nor contrary to public policy. In most cases, courts will not inquire into any inherent disparity in the utility of a given exchange between parties, but solely into its voluntariness. *See* 24 Williston on Contracts, § 65:1, p. 213 (4th ed. 2002)("Williston"); *see also* Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach,* 77 Colum. L.Rev. 554, n. 12 (1977). In most contract cases, the law of compensatory damages applies, providing a standard measure of compensation limited to the amount of injury incurred under a breach of the contract. *See* Note, *Liquidated Damages as Prima Facie Evidence,* 51 Ind. L.J. 189 (1975); *see also* Restatement § 346 cmt. c ("The central objective behind the system of contract remedies is compensatory, not punitive."); *Ray v. Eurice,* 201 Md. 115, 93 A.2d 272 (1952); Holmes, *The Path of the Law,* 10 Harv. L.Rev. 457, 462 (1896)("The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else.") Liquidated damages provisions, however, allow private parties to reform that fixed concept of injury providing relief in excess, or in lieu, of compensatory damages. "[T]he fundamental purpose of a valid liquidated damages provision is to provide a reasonable measure of compensation in the event of a breach where, at the time the provision is agreed to the damages are indeterminable or will be otherwise difficult to prove." Williston, *supra,* § 65:3, p. 250; *see also* Note, *supra,* 51 Ind. Law at 192–193 (collecting

---

**8.** The Restatement (Second) of Contracts ("Restatement") § 346(2) (1979) provides for award of nominal damages in cases where the "amount of loss is not proved under the rules" stated in the provisions of the Restatement.

arguments for treating liquidated damages as an exception to compensation).

In determining the validity of liquidated damages provisions, courts conduct a more searching inquiry into the propriety and reasonableness of the agreement itself, under the auspices of the so-called penalty doctrine, than would be conducted in any more typical contract case.[9] *See* Goetz and Scott, *supra,* at 555; *see also* Clarkson et al., *supra,* 1978 Wis. L.Rev. at 357. Under the penalty doctrine, a liquidated damages provision fixing an unreasonably large liquidated damages amount is void as a penalty. *See* Restatement § 356 ("Damages for breach by either party may be liquidated . . . but only at an amount that is reasonable in the light of the anticipated or actual loss[.]") This reasonableness test

---

**9.** For a useful discussion of the history of the construction of liquidated damages provisions see Goetz & Scott, *supra,* at 593–94. Despite its long history, the development of the law concerning liquidated damages itself has routinely been characterized by courts and observers as checkered at best. *See Mount Airy Milling & Grain Co. v. Runkles,* 118 Md. 371, 376, 84 A. 533 (1912)("It is conceded that this question [validity of liquidated damage provisions] is very frequently one of the most difficult and perplexing inquiries encountered in the construction of written agreements."); Goetz & Scott, *supra,* at 554, n. 3. In fact, in a seminal article on the subject, the following passage, eloquently describing such problems, is quoted: "The ablest judges have declared that they felt themselves embarrassed in ascertaining the principle on which the decisions [distinguishing liquidated damages from penalties] . . . were founded." Clarkson, Miller & Muris, *Liquidated Damages v. Penalties: Sense or Nonsense,* 1978 Wis. L.Rev. 351 (1978)(quoting *Cotheal v. Talmage,* 9 N.Y. 551, 553 (1854)); *see also* Williston, *supra,* § 65:9, p. 270 ("The distinction between a penalty and liquidated damages is not an easy one to draw in practice but courts are required to draw it."). Further, E. Allen Farnsworth, a Reporter for the Restatement (Second) of Contracts, has 10 as follows, obliquely criticizing the differential treatment of most stipulated damages provisions:

With the development of a doctrine of unconscionability capable of coping with abusive stipulated damage provisions in the same way as other abusive provisions, . . . it has become increasingly difficult to justify the peculiar historical distinction between liquidated damages and penalties. Today the trend favors freedom of contract through the enforcement of stipulated damage provisions as long as they do not clearly disregard the principle of compensation.

E. Allen Farnsworth, Farnsworth On Contracts § 12.18, at pp. 303–04 (3d ed.2004) (footnote omitted).

"strikes a balance between ... two competing sets of princi-
ples [upholding and disallowing stipulated damages provisions]
by ensuring that the court respects the parties' bargain but
prevents abuse." *Wassenaar v. Panos*, 111 Wis.2d 518, 529,
331 N.W.2d 357 (Wis.1983). Two recognized bases for unrea-
sonableness characterize liquidated damages provisions as un-
reasonable, or penalties, when the sum for damages is so
disproportionate with provable damages "as to require the
inference that the agreement must have been effected by
fraud, oppression or mistake" or, when an "objectionable *in
terrorem* agreement [is used] to secure performance" in place
of the usual conception of just compensation.[10] *See* Goetz &

---

**10.** The outline of the law as stated in Williston, supra, § 65:1, pp. 215–
31 complements our recitation:

It is generally agreed that a liquidated damages provision does not
violate public policy when, at the time the parties enter into the
contract containing the clause, the circumstances are such that the
actual damages likely to flow from a subsequent breach would be
difficult for the parties to estimate or for the nonbreaching party to
prove, and the sum agreed upon is designed merely to compensate
the nonbreacher for the other party's failure to perform. On the
other hand, a liquidated damages provision will be held to violate
public policy, and hence will not be enforced, when it is intended to
punish, or has the effect of punishing, a party for breaching the
contract, or when there is a large disparity between the amount
payable under the provision and the actual damages likely to be
caused by a breach, so that it in effect seeks to coerce performance of
the underlying agreement by penalizing non-performance and mak-
ing a breach prohibitively and unreasonably costly. In such cases the
clause, rather than establishing damages that approximate or are
proportional to the harm likely to flow from a particular breach,
actually constitutes a penalty, and, since penal clauses are generally
unenforceable, provisions having this effect are declared invalid; and
this is generally true even where the provision is *negotiated in good
faith, at arms length and between parties of equal bargaining power.*
These rules are designed to allow the parties the greatest freedom of
contract while at the same time preventing them from overstepping
that freedom by including illegitimate penal provisions. As the draft-
ers of the Restatement (Second) of Contracts point out, and as the
cases make clear, "[t]he central objective behind the system of
contract remedies is compensatory, not punitive. Punishment of a
promisor for having broken his promise has no justification on either
economic or other grounds and a term providing such a penalty is
unenforceable on grounds of public policy."
Thus, because the purpose of contract remedies is to provide compen-
sation for the harm caused by a breach, and because a liquidated

Scott, *supra*, at 560–61; *see also Wassenaar, supra*, 111 Wis.2d at 529, 331 N.W.2d 357.

In *Traylor, supra*, 273 Md. at 661–62, 332 A.2d 651, the Court of Appeals outlined Maryland law pertaining to liquidated damages clauses as follows:

> We have defined "liquidated damage" as a " 'specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other.' "

> [O]ur decisions ... have held that a liquidated damage clause is within the substantive law of contracts, and—if not a "penalty"—is an enforceable provision as a sum agreed upon by the parties to be paid in the event of a breach, enforceable as any other provision or valid promise in the contract.

> The nomenclature used by the parties, although a circumstance, is not determinative in passing upon whether or not the payment of the designated sum is in fact a penalty. The

---

damages clause is designed to substitute a sum agreed upon by the parties for any actual damages suffered as a result of a breach, it, too, must be calculated to compensate, rather than to punish a breach. As a result, the law of most jurisdictions requires that a liquidated damages provision, in order to be enforceable, constitute the parties' best "estimate of potential damages in the event of a contractual breach where damages are likely to be uncertain and not easily proven." Moreover, since a valid liquidated damages clause is intended to substitute the sum agreed upon for any actual damages that may be suffered as a result of a breach, one "purpose of a liquidated damages provision is to obviate the need for the nonbreaching party to prove actual damages." Thus, where the liquidated damages clause represents a reasonable attempt by the parties to agree in advance upon a sum that will compensate the nonbreacher for any harm caused by the breach, in lieu of the compensatory contract damages to which the nonbreacher would otherwise be entitled, the clause will be upheld. By parity of reasoning, because the goal of contract remedies is compensation, not punishment, if the purpose or effect of a provision stipulating damages is to punish the nonperformance of a party's obligations under the agreement, or to coerce or secure performance of the agreement through the assessment of an unreasonable sum payable upon nonperformance, the provision will be not be upheld.
(Emphasis added).

decisive element is the intention of the parties—whether they intended that the sum be a penalty or an agreed-upon amount as damages in case of a breach and this is to be gleaned from the subject matter, the language of the contract and the circumstances surrounding its execution.

If the sum agreed upon is a reasonable forecast of the just and fair compensation for the harm that would result by a breach of the contract and the resultant injury is difficult to estimate accurately or actual damages could not be easily ascertained, such a clause has been held enforceable as liquidated damages. . . .

Where, however, the amount agreed upon and inserted in the agreement is shown to be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract, the amount specified removes it from the ambit of "liquidated damages."

(Internal citations omitted); *see also* Williston § 65:9, p. 266–27; 8 Maryland Law Encyclopedia, *Damages* § 51, p. 104–05 (2001)("In determining the scope of a provision in a contract for liquidated damages, it will be interpreted according to the rules applicable to contacts generally.") (citing *John Cowan, Inc. v. Meyer,* 125 Md. 450, 94 A. 18 (1915)).

 As noted, the validity of a stipulated damages provision is a question of law for the court.[11] A legal conclusion regarding the validity of a stipulated damages provision, however, is dependent on factual determinations of the trial judge "including such matters as the existence and extent of the anticipated and actual injury to the nonbreaching party." *Wassenaar v. Panos,* 111 Wis.2d 518, 525, 331 N.W.2d 357 (Wis.1983).[12]

---

**11.** Note use the term "stipulated damages" for proposed clauses and "liquidated damages" for clauses that meet the legal requirements.

**12.** The *Wassenaar* court included the following passage which we find to be a persuasive explanation of this complicated subject:

### Burden of Proof

An initial inquiry is determining which party shouldered the burden of proof.[13] We find no definitive Maryland law on this subject. Expressing skepticism concerning the traditional common law treatment of liquidated damage clauses, this Court very recently stated in *dicta* that, in light of the principles of freedom of contract, "[t]he burden of proving that a particular damage stipulation is not enforceable is 'on the party seeking to invalidate' it." *Smelkinson Sysco v. Harrell,* 162 Md.App. 437, 447, 875 A.2d 188 (2005)(citing *Mattvidi Assocs. Ltd. P'ship v. NationsBank of Va.,* 100 Md.App. 71, 92, 639 A.2d 228, cert. denied, 336 Md. 277, 647 A.2d 1216). We also note that our citation to *Mattvidi* is not conclusive of Maryland law, for that case was decided under Virginia law. *See Mattvidi Assocs. Ltd. P'ship, supra,* 100 Md.App. at 91–92, 639 A.2d 228.

As we will develop further below, *Mattvidi* involved a dispute between two commercially sophisticated parties about construction of their agreement fixing the amount of a late charge. *See id.* at 93, 639 A.2d 228 ("When two commercially sophisticated parties freely enter into an agreement containing a late charge clause . . . it seems entirely appropriate that the burden of proof should be on the party who later claims that the clause is invalid.")

It is significant, as the *Smelkinson Sysco* Court noted early on in its opinion, that it was not dealing with a liquidated

---

Whether the facts fulfill the legal standard, here reasonableness, is a determination of law, id., and ordinarily the appellate court need not defer to the trial court's determination of a question of law. Nevertheless, because the trial court's legal conclusion, that is, whether the clause is reasonable, is so intertwined with the factual finding supporting that conclusion, the appellate court should give weight to the trial court's decision, although the trial court's decision is not controlling.
111 Wis.2d at 525, 331 N.W.2d 357 (internal citations omitted).

**13.** We discuss the burden of proof in an effort to be instructive in future litigation. Appellant did not, at trial, and does not before this Court, argue that the burden should have been placed upon appellee as the party opposing enforcement of the liquidated damages provision.

damages provision. Nonetheless, the Court discussed the effect of a reasonableness inquiry.[14] *See Smelkinson Sysco, supra,* 162 Md.App. at 451, 875 A.2d 188.

 Not discussed in either *Mattvidi* or *Smelkinson Sysco* is *Mount Airy Milling & Grain Co., supra,* 118 Md. 371, 84 A. 533, wherein the Court of Appeals indicated that the burden was on the party seeking to sustain a liquidated damages penalty to show it was incorporated intelligently to fix a measure of damages. The Court noted that "speaking of a sum of money in gross for the nonperformance of an agreement '[I]t will not, as of course, be considered as liquidated damages, and it will be incumbent on the party who claims it as such that they were so considered by the considered by the contracting parties.' " *Mount Airy Milling & Grain Co., supra,* 118 Md. at 377, 84 A. 533 (quoting *Tayloe v. Sandiford,* 7 Wheaton 13, 5 L.Ed. 384 (1822)).[15,16]

---

**14.** "It is debatable whether a stipulated damages clause such as the one before us is subject to the 'reasonableness' or 'penalty' standard that applies to a liquidated damages clause, or, instead, whether it is measured against a more deferent standard, such as unconscionability, that applies to other contractual terms. That question need not be answered to resolve this appeal, however. Assuming *arguendo* that this provision may not be enforced unless it is reasonable, we nevertheless conclude that it satisfies that test." *Smelkinson Sysco,* 162 Md.App. at 451, 875 A.2d 188. (Footnotes omitted)

**15.** Further, "if there is a doubt whether a contract provides for liquidated damages or a penalty, the provision will be construed as a penalty." *Goldman v. Conn. Gen. Life Ins. Co.,* 251 Md. 575, 581, 248 A.2d 154 (1968).

**16.** The Court of Appeals recently noted generally of contract law that, when the party seeking to enforce a contract files the initial complaint, shoulders the burden of proving the contract is valid and generates a prima facie case to the end, the defending party (the party seeking to invalidate the contract) bears the burden of production as to the defenses of fraud, durress, coercion, mistake, undue influence, or incompetence.
*Cannon v. Cannon,* 384 Md. 537, 555, 865 A.2d 563 (2005). This passage provides further support for our view that prima facie validity must be shown in order for a non-breaching party to sustain a stipulated damages provision

The circumstances of the case *sub judice* militate against a strict application of the assignment of the burden of proof outlined in *Mattvidi* and subsequently in *Smelkinson Sysco*, because we believe those cases to be inapposite. Courts of other jurisdictions are sufficiently divided on the issue of burden of proof in stipulated damage cases as to not prove instructive. *See, e.g. Mattvidi Assocs. Ltd. P'ship, supra,* 100 Md.App. at 92, 639 A.2d 228 (collecting various instances of divergent case law). The majority places the burden of proof on the party challenging a stipulated damages provision, while others place the burden on the party seeking its ratification. *See, e.g.,* Williston, *supra,* § 65:30, 355–58 (outlining various reasons courts put forth placing the burden of proof on the non-breaching party); Note, *supra,* 51 Ind. L.J. at 205 (arguing that liquidated damages clauses should serve as prima facie evidence subject to rebuttal by the defendant, who must prove that the clause is inconsistent with actual damages).

Those courts that place the burden on the party challenging the provision argue that doing so comports with the protections afforded the non-breaching party by designating stipulated damage provisions in the first place. *See, e.g., S. Brooke Purll, Inc. v. Vailes,* 850 A.2d 1135, 1138 (D.C.2004)(recently clarifying District of Columbia law on the subject of the allocation of the burden of proof); *Wassenaar, supra,* 111 Wis.2d at 526, 331 N.W.2d 357 ("Placing the burden of proof on the challenger is consistent with giving the nonbreaching party the advantage inherent in stipulated damages clauses of eliminating the need to prove damages, and with the general principle that the law assumed that bargains are enforceable and that the party asking the court to intervene to invalidate the bargain should demonstrate the justice of his or her position.")

Those courts that place the burden on the party seeking enforcement of a liquidated damages clause do so, *inter alia,* because the party seeking enforcement has the "most immediate access to the evidence on the issue of both (a) the difficulty of advance estimation of damages and (b) the reasonableness of the forecast." *Pacheco v. Scoblionko,* 532 A.2d 1036, 1039

(Me.1987). A gray area also exists in which even courts that place the burden of proof on the breaching party do so only when it appears that the stipulated damages clause at issue is not patently out of proportion with expected loss. *See Little v. Rohauer,* 707 P.2d 1015, 1017 (Colo.Ct.App.1985)(noting that "the burden of proving that a liquidated damages clause constitutes a penalty is on the party so asserting, unless it *patently appears from contract itself that the liquidated damages agreed upon are out of proportion to any possible loss.*")

 From our review of those cases, we can conclude that the bargaining position of the parties contributes to the *prima facie* determination of the validity of a particular stipulated damages provision. One basis for deeming a stipulated damages provision unreasonable is if damages are so excessive as to demonstrate an inference of unfairness in bargaining. Drawing upon the cases, articles, and treatises, we conclude that a non-breaching party cannot simply survive the legal test of reasonableness, regardless of the assignment of the burden of proof, where, as in the case *sub judice,* the court is not dealing with a freely negotiated damages provision made between two parties of equal sophistication. Thus, the ultimate question of the assignment of the burden of proof, in cases where gross inequality of bargaining power exists, ought to be resolved in favor of the non-proponent of the provision, because the stipulated damage may prove unreasonable *a. priori.*[17] *See District Cablevision Limited P'ship v. Bassin,*

---

17. Paralleling this reasoning, Goetz and Scott proposed a more liberal enforcement standard, doing away with the penalty doctrine itself in light of the presence of idiosyncratic (non-provable) value in liquidated damage provisions. See Goetz and Scott, supra, at 588 ("The underlying premise of the enforcement hypothesis is that, in the absence of bargaining unfairness, a stipulated damage clause reflects equivalent value.") Importantly, for our purposes, in order to determine the propriety of liquidated damage provisions, the authors retained a caveat that an evaluation of the process of bargaining remained as the major tenet underpinning the enforcement of liquidated damages provisions. *See* Goetz and Scott, *supra,* at 593 ("[I]t is clear that party sophistication will often be a relevant issue in determining the fairness of a stipulated damages provision. Many contracting parties may not be capable of calculating the risks necessary to bargain for the *in terrorem*

828 A.2d 714, 723–24 (D.C.2003)("[W]here there is a disparity of bargaining power and one party unilaterally imposes a liquidated damages provision in an adhesive contract, the skepticism (bordering, it has been suggested, on outright hostility) shown by the common law to liquidated damages is at its height.")

### *Reasonableness*

"The reasonableness of the amount fixed as liquidated damages is to be determined from the standpoint of the parties at the time the contract was made." *Traylor, supra,* 273 Md. at 663, 332 A.2d 651 (citing *Hammaker v. Schleigh,* 157 Md. 652, 667, 147 A. 790 (1929)). "Further, one of the elements of a valid liquidated damages provision is that the anticipated damages be 'in their nature uncertain and incapable of exact ascertainment'" *United Cable Television of Balt. Ltd. P'ship v. Burch,* 354 Md. 658, 674, 732 A.2d 887 (1999)(quoting *Anne Arundel County v. Norair Eng'g Corp.,* 275 Md. 480, 492, 341 A.2d 287 (1975)). In *Holloway v. Faw, Casson & Co.,* 78 Md.App. 205, 240, 552 A.2d 1311 (1989)(quoting *Massachusetts Indemnity and Life Ins. Co. v. Dresser,* 269 Md. 364, 368–69, 306 A.2d 213 (1973)), we set forth the following three-part test outlining the essential features of a valid liquidated damages clause:

(1) The clause "must provide 'in clear and unambiguous terms' for '*a certain sum* '"

(2) "[T]he liquidated damages must *reasonably be compensation for the damages anticipated* by the breach"

(3) "[L]iquidated damage clauses are by their nature *mandatory binding agreements* before the fact which *may not be altered to correspond to actual damages determined after the fact.*"

---

clause at an equivalent price." Further under their theory of enforcement, "[a]s part of his burden of proof, the promisee would be required to demonstrate that the parties had sufficient commercial sophistication and access to information to allocate fairly the identified risks.")

(Internal citations omitted); *see also Dresser, supra,* 269 Md. at 368–69, 306 A.2d 213; *Sysco v. Harrell,* 162 Md.App. 437, 875 A.2d 188 (2005); Williston, *supra,* § 65:3, p. 248–253.

■■■ The specific context of a covenant not to compete presents a factual scenario in which stipulated damage provisions are generally enforceable, given that quantifying the amount of damages in such cases may be an elusive prospect. *See Miller, supra,* 1978 Wisc. L.Rev. at 377 (finding that "if parties lack the incentive or opportunity to engage in breach-inducing activities [liquidated damages clauses should be enforced] . . . [because] if breach requires a positive step rather than mere nonperformance, such as in the case of a breach of a covenant not to compete, the nonbreacher usually cannot covertly induce breach.").

> However . . . stipulated damages provisions for breaches of covenants not to compete are in general analyzed by application of the principles under which enforceability of such provisions is generally determined, as a result of which provisions applicable to situations in which the potential damages are not uncertain or difficult to estimate, provisions intended to punish rather than compensate, and provisions the enforcement of which results in the awarding of damages which are disproportionate to the reasonably estimated or actual damages suffered by the party seeking to invoke the provision are unenforceable.

Williston, *supra,* § 65:25, 336–37 (footnotes omitted).

Courts are much more willing to regard a stipulated damages provision as reasonable where ordinary principles of compensation cannot easily be applied and will not afford certain relief, because the damages which can be foreseen to result from a breach are not easily quantifiable at the time of the contract. Williston, *supra,* § 65:14, 209. Further,

> [t]he Restatement (Second) of Contracts provides, and the decided cases recognize, that where the difficulty and uncertainty are substantial, the parties are allowed equally substantial latitude in fixing on a stipulated amount, while

where the difficulties and uncertainty are of a lesser magnitude, the parties' freedom is similarly circumscribed.

*Williston, supra,* § 65:14, 290 (citing Restatement § 356).

■ The actual reasonableness of the forecast of damages, rather than uncertainty alone, however, constitutes the crux of the analysis.[18] *See* Clarkson, et al., supra, 1978 Wis. L.Rev. at 353 ("whatever the judges prescribe as the applicable criteria, scrutiny of the results reveals that intent and certainty are largely superfluous to understanding the liquidated damages/penalty distinction."); *see also* Williston, *supra,* § 65:16, p. 294 ("under the decisions of the most authoritative courts, the primary question seems to be whether the parties honestly endeavored to fix a sum equivalent in value to the harm caused by the breach....")

■ Appellant put forth three bases in arguing for the reasonableness of the liquidated damages provision at issue. First, appellant alleged that, in an earlier case, the cost of litigating a breached non-compete provision against a former employee was approximately $50,000. Second, appellant alleged that $50,000 was a reasonable estimate of the expense incurred in hiring and training a salesman like Javier. Lastly, and we think particularly telling, appellant conceded that the covenant had been taken from employment contracts utilized by a "friendly competitor," the Cantwell–Cleary Company, because it was a persuasive valuation of appellant's damages.[19]

---

18. Under either an *ex ante* or *ex post* conception of the reasonableness of damages, the stipulated damage clause in the case *sub judice* bears no relation to damages resulting from Javier's breach. One article noted that, in particular, an *ex-post* evaluation of the correspondence between actual damages and a liquidated damages amount would constitute, in effect, a means of monitoring the efficiency of stipulated damage agreements in order to disallow disproportionately large damage amounts. *See* Jason Scott Johnston, *Strategic Bargaining and the Economic Theory of Contract Default Rules,* 100 Yale L.J. 615, 646 (1990). *But see* Williston, *supra,* 65:1, p. —— (stating broadly that "[i]t can even be argued that a penalty clause is unlikely to overcompensate the promisee if an *ex ante* (before the fact) perspective is employed, because the promisor would not agree to such a clause unless it was necessary to compensate the promisee for an expected loss.")

19. Willard's president and corporate designee, Salkeld, testified in a deposition, and at trial, that the non-compete clause, including the

Evaluating each of appellant's three stated bases for the liquidated damages clause, we cannot find that, at the time the covenant was signed, there was an indication that the liquidated damages amount was reasonable compensation for anticipated loss in the event of a breach by an employee. *See Holloway v. Faw, Casson & Co.*, 319 Md. 324, 355–56, 572 A.2d 510 (1990)(upholding a fee equivalent multiplier formula-based liquidated damages provision predicated on demonstrably protected interests). No reasonable method was employed whatsoever in affixing the amount of stipulated damages in the case *sub judice.* At the time of the formation of this contact, and after its breach by Javier, neither anticipated nor actual damages were taken into account. Javier was not provided with trade secrets, customer lists, a prescribed route, or any other information that an employer might consider to be a protected interest. The stipulated damages clause at issue was merely meant to penalize and punish Javier for taking a job with a competitor of Willard, rather than to compensate Willard for any loss, especially in light of the concession by Willard's officer that appellee was not possessed of any partic-

---

liquidated damage amount, was taken from the Cantwell–Cleary contract. On direct examination, Salkeld testified:

[APPELLANT'S COUNSEL]: Okay. How did [the contract] come to Willard Packaging? Who prepared it for you?
A. Um, we got it from one of our competitors.
Q. What was the competitor's name?
A. Cantwell Cleary [ ] Company.
Q. Cantwell Cleary is a box manufacturer?
A. It's a distributor of packaging supplies and a competitor of Willard Packaging.
Q. Was your father friends with the owner of Cantwell Cleary—[?]
A. Yes.
Q. —over the years? You obtained a copy of this. Did you change any of the language in the contract?
A. A little bit, here and there. Made it more applicable to a manufacturer. Inserted Willard Packaging wherever Cantwell Cleary was.
Q. Okay.
[THE COURT]: Was the figure $50,000 in the document that you used to construct this document?
A. Yes.
[THE COURT]: So, the figure was copied as well?
A. That is correct.

ular skill or talent, which, if practiced for a competitor, would likely result in damage to Willard.

It is clear from the facts that the clause itself was an agreement based upon inequalities of bargaining power. The lack of true arms-length dealing between Willard and the employees, including appellee, militates against a finding of reasonableness.[20] Moreover, Willard presented no evidence of actual damages resulting from Javier's breach and resulting employment with Atlas.[21] We are led to the conclusion that the stipulated damages clause in the restrictive covenant violates the compensatory nature of contract damages. Thus, the stipulated damages provision is unreasonable and unenforceable as a penalty.

In the final analysis, Willard has attempted to rely on the four corners of the agreement as support for the liquidated damage amount. We, however, agree with the trial court that,

---

**20.** Judge Thieme, in *Sysco v. Harrell, supra,* noted: "When parties are sophisticated and externalities are absent, courts do not review the parties' contractual choices for reasonableness." *Id.* at 451, n. 5, 875 A.2d 188. Conversely, then, if one of the parties is not sophisticated, the court should conduct a reasonableness review. *Cf.* Goetz & Scott, *supra,* Colum. L.Rev. 593–94 ("[I]t is clear that party sophistication will often be a relevant issue in determining the fairness of a stipulated damages provision." Further, "[t]he current penalty rule does not promote end results which are any 'fairer' than an enforcement rule. The behavior which requires regulation is unfairness in bargaining.") On the facts before us, we find appellant to be a sophisticated party and appellee to be an unsophisticated party. Therefore, the court's reasonableness review was appropriate.

**21.** We recognize that requiring proof of actual damages in all cases involving liquidated damages clauses would ameliorate the fundamental purpose of liquidated damages clauses. When a liquidated damages provision appears by its nature to be a penalty, however, inquiry into the existence of actual damages is appropriate. *See Traylor, supra,* 273 Md. at 670–71, 332 A.2d 651 (upholding the trial court's restriction of evidence of actual damages in a case construing the impact of a liquidated damages clause because the amount designated as liquidated damages did not appear to be a penalty and constituted prerequisites necessary for an enforceable contract); *see also Habif, Arogeti & Wynne v. Baggett,* 231 Ga.App. 289, 299, 498 S.E.2d 346 (Ga.Ct.App.1998); Note, *supra,* 51 Ind. L.J. at 194 (arguing for the relevance of actual damages).

absent a rational relationship to anticipated actual damage, the liquidated damage amount was a *de facto* unenforceable penalty. *See Fowler v. Printers II, Inc.*, 89 Md.App. 448, 479, 598 A.2d 794 (1991)("if 'the record sets forth no basis on which damages could have been assessed,' they cannot be recovered in a contract action." (citing *Yarnick v. King*, 259 Md. 241, 250, 269 A.2d 607 (1970))); *see also Lee Oldsmobile, Inc. v. Kaiden*, 32 Md.App. 556, 563, 363 A.2d 270 (1976)(rejecting a liquidated damages clause because actual damages were capable of estimation at the time contract at issue was signed).

## THE CROSS APPEAL

In his cross-appeal, Javier alleged that the trial court erred in finding a breach of the contract. Appellee concedes that his cross-appeal is contingent, to preserve his right to pursue a complete defense should this Court reverse the trial court's damages ruling. At oral argument before this Court, appellee committed that, should we affirm, the cross-appeal will be abandoned. Hence, we need not resolve the issue raised therein.[22]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**

---

22. We observe, in passing, that it is unclear whether the **restrictive** covenant **itself** is enforceable. "[A]n employer has a legitimate interest and so can enforce 'restrictive covenants' only against those 'employees who provide unique services, or to prevent the future misuse of trade secrets, routes, or lists of clients, or *solicitation of customers.*' " *Fowler, supra,* 89 Md.App. at 459, 598 A.2d 794 (quoting *Becker v. Bailey,* 268 Md. 93, 97, 299 A.2d 835 (1973)). Appellant alleged that its unique service and distribution structures provided the predicate for enforcement of the restrictive covenant. Yet, when asked whether Willard was looking for any unique set of talents or skills before hiring Javier, Salkeld admitted he was not seeking unique skills or attributes but "a likeable person the customers would like."