HEADNOTES

*Sang Ho Na v. Malinda Gillespie*, No. 1919, September Term, 2016

**ALTERNATIVE DISPUTE RESOLUTION > MEDIATION >
ENFORCEABILITY OF AGREEMENTS TO MEDIATE**

Parties to private, voluntary mediations can contract to maintain the confidentiality of
mediation communications.

Circuit Court for Howard County
Case No. 13-C-15-105803

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1919

September Term, 2016

_____

SANG HO NA

v.

MALINDA GILLESPIE

_____

Meredith,
Berger,
Friedman,

JJ.

_____

Opinion by Friedman, J.
_____

Filed: December 1, 2017

This appeal concerns the circuit court's denial of Sang Ho Na's Motion to Enforce Mediated Settlement Agreement following the parties' voluntary, private mediation to determine custody of their daughter. Na argues that the circuit court erred when it denied his Motion to Enforce Mediated Settlement Agreement. Additionally, Na argues that the circuit court erred by ordering him to pay $85,000 in attorney's fees to Malinda Gillespie, and in awarding primary physical custody to Gillespie with visitation to Na.

For the reasons that follow, we affirm the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Na and Gillespie are the unmarried parents of a daughter, born in July 2014. Na regularly visited the child, but she resided exclusively with Gillespie until November 20, 2015, when Na filed a Complaint for Custody and Other Relief in the Circuit Court for Howard County. Gillespie counterclaimed for custody, and on December 1, 2015 she filed a Request for Emergency Ex Parte Relief. An emergency *pendente lite* hearing was held that resulted in a temporary order granting joint legal custody to the parties with primary physical custody to Gillespie and visitation to Na until a full merits hearing could be held.

Prior to the merits hearing, the parties attended voluntary, private mediation. On the day of mediation, the parties, their counsel, and the mediator signed an Agreement to Mediate, by which they agreed to maintain the confidentiality of statements made and documents created during the mediation. The parties then proceeded with approximately nine hours of mediation. Meanwhile, outside, a snowstorm developed. Due to the snow, the parties ended their mediation session without reducing any agreed-upon terms to

writing. It is undisputed that counsel for both parties agreed to work toward drafting an outline of the various terms discussed during the mediation with the ultimate goal of submitting a consent order to the court. The parties disagree, however, on the extent to which any final agreement was reached on all of the disputed issues.

In the days following mediation, counsel for the parties exchanged a number of emails regarding the preparation of a final written order. In her emails to Na's counsel, Gillespie's counsel maintained the position that the parties had not "close[d] the loop on all items" and that the terms needed "some more specificity." Na's counsel, however, believed that the parties had reached a binding, enforceable settlement agreement during mediation. Ultimately, counsel exchanged contrasting drafts, but the parties were unable to agree on a final consent order. Due to these continued disagreements, Na filed a Motion to Enforce Mediated Settlement Agreement ("Motion to Enforce"), which Gillespie moved to dismiss.[1]

On April 26, 2016, the Circuit Court for Howard County held a hearing on the Motion to Enforce, and both sides gave oral argument regarding whether the parties had reached a binding, oral settlement agreement during mediation. Na also sought to introduce documents and testimony from the attorneys and the mediator who participated in the mediation to prove the existence, and the terms, of the parties' alleged settlement

---

[1] It is not clear why Gillespie captioned this pleading as a motion to dismiss, rather than as an opposition to Na's Motion to Enforce.

agreement. Gillespie's counsel objected, arguing that the confidential nature of the mediation barred any evidence of statements or documents made during the conference. The circuit court agreed with Gillespie, stating:

> One of the fundamental principles that makes mediation work is the concept of confidentiality [—] that I can say anything in my mediation with my opponent and it can't be used against me in court … [t]hese parties walked into that mediation with that expectation … I find that anything that came out of the mediation that was not a written agreement is inadmissible and therefore I have to grant the motion to dismiss.

The circuit court found that the Agreement to Mediate prohibited any discussion of the contents of mediation, and therefore the evidence Na wished to present was inadmissible. As a result, the court denied Na's Motion to Enforce.

The court then held a three-day merits hearing, at the end of which it awarded the parties joint legal custody and primary physical custody to Gillespie with visitation to Na. The circuit court also ordered Na to pay $85,000 of Gillespie's attorney's fees. Na timely noted this appeal.

## DISCUSSION

### I. Denial of the Motion to Enforce Mediated Settlement Agreement

In reviewing the denial of a motion to enforce a settlement agreement, we review the circuit court's factual findings for clear error and its legal conclusions *de novo*. *Eastern Envtl. Endeavor, Inc. v. Indus. Park Auth. of Calvert Cnty.*, 45 Md. App. 512, 518–19 (1980).

3

Na challenges the circuit court's denial of his Motion to Enforce on the grounds that the court improperly denied him the opportunity to present evidence to prove that he and Gillespie had in fact come to a final agreement on all the disputed issues related to custody of their daughter. Na argues that because the parties opted for voluntary, private mediation, none of Maryland's mediation confidentiality statutes or rules apply, and that, as a result, he is entitled to prove the existence of the parties' settlement agreement through testimony regarding the mediation discussions. Gillespie responds that even though the parties voluntarily attended mediation, Maryland law protecting confidentiality of mediation and the plain language of the parties' Agreement to Mediate require that all communications arising out of the parties' mediation remain confidential. Thus, Gillespie contends, any evidence offered by Na regarding the mediation is barred.

We conclude that both parties are partially correct, as we shall explain in the sections that follow. Na is correct that no Maryland statute or rule protecting mediation confidentiality applies to the voluntary, private mediation in this case. The parties' Agreement to Mediate, however, constitutes a binding contract to maintain the confidentiality of all communications and documents related to their mediation. Therefore an evidentiary hearing, as Na requests, would be futile because all of the evidence that he wishes to offer is inadmissible. We explain.

*A. Maryland Mediation Rules and Statutes*

The parties spend most of their efforts fighting about the applicability *vel non* of several statutes and rules regarding confidentiality in mediation, none of which are directly applicable to the voluntary mediation at issue in this case. Na contends that because these rules do not, by their terms, apply to voluntary, private mediations, he is entitled to present evidence of mediation communications that would otherwise be confidential. Gillespie argues that even though the confidentiality rules for court-ordered mediations do not literally apply to voluntary mediations, they are nonetheless instructive and should be construed broadly. She suggests that, in accordance with Maryland's policy of encouraging voluntary settlement of lawsuits, parties who voluntarily agree to mediate should be entitled to similar confidentiality protections as those parties who are referred to mediation by a court.

We agree with Na that Maryland's statutes regarding confidentiality in court-ordered mediations do not apply here. *First*, Title 17 of the Maryland Rules provides detailed rules governing confidentiality in Alternative Dispute Resolution, including mediation. By their express terms, however, these rules apply only when the matter is referred by a court to mediation, not, as here, where the parties undertake it voluntarily. Md. Rule 17-101(a). *Second*, the Maryland Mediation Confidentiality Act, Title 3, Subtitle 18 of the Courts and Judicial Proceedings Article, provides another set of rules governing confidentiality of mediation. Md. Code Cts. & Jud. Proc. ("CJ") § 3-1801, *et seq*. Though

5

this Act applies to all mediations ordered by administrative agencies or courts, it only applies to private mediations when the mediator certifies in writing that he or she will follow the Maryland Standards of Conduct for Mediators, which did not occur in this case. CJ § 3-1802. *Third*, Maryland Rule 5-408 is a rule of evidence which makes settlement negotiations inadmissible in many situations. In this case, however, Rule 5-408 doesn't apply because the parties do not dispute the "validity, invalidity, or amount of a civil claim in dispute." Md. Rule 5-408(a). Therefore, none of these laws make the content of this mediation confidential. But, that does not mean the opposite is necessarily true.

Gillespie argues that even if the laws and rules referenced by Na don't apply, they reflect a policy in favor of mediation confidentiality. *See Gen. Motors Corp. v. Lahocki*, 286 Md. 714 (1980) (discussing Maryland's public policy in favor of compromise and settlement). While there is some attraction to this view, it is dangerous for courts to ignore the plain words of exclusion in a statute or rule. If the law says confidentiality doesn't automatically apply in a certain situation, it is difficult for us to say that it does apply. Perhaps the exclusion was the compromise that allowed the bill to pass. Fortunately, however, we need not resolve this question because here the parties themselves have contracted to maintain confidentiality.

*B. The Agreement to Mediate*

The circuit court found that the terms of the parties' Agreement to Mediate clearly reflected an understanding that all parties involved in the mediation would be bound by

6

confidentiality. Based on this understanding, the circuit court denied the Motion to Enforce because to prove his claim, Na would necessarily have to present confidential evidence. Na argues that, although the Agreement to Mediate addressed the confidential nature of the mediation discussions, its terms do not preclude him from presenting evidence on the content of mediation to prove that the parties reached a final settlement. We agree with the circuit court that the Agreement to Mediate constitutes an enforceable contract, by which the parties clearly and unambiguously agreed to keep the content of mediation confidential.

Maryland law recognizes the freedom of parties to contract as they see fit. *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 76 (2004) ("As a general rule, parties are free to contract as they wish.") (cleaned up).[2] "Under the principles of freedom of contract, parties have a broad right to construct the terms of contracts they enter into as they wish." *Willard Packaging Co. v. Javier*, 169 Md. App. 109, 122 (2006). Parties who voluntarily engage in mediation, such as Na and Gillespie, therefore, are free to define the governing terms—including the scope of confidentiality—of their mediations by contract. *Long v. State*, 371 Md. 72, 74 (2002) (quoting *Slice v. Carozza Properties, Inc.*, 215 Md. 357 (1958) ("the

---

[2] "Cleaned up" is a new parenthetical intended to simplify quotations from legal sources. *See* Jack Metzler, *Cleaning Up Quotations*, J. APP. PRAC. & PROCESS (forthcoming 2018), https://perma.cc/JZR7-P85A. Use of (cleaned up) signals that to improve readability but without altering the substance of the quotation, the current author has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization.

written language embodying the terms of an agreement will govern the rights and liabilities of the parties")).

To determine whether the confidentiality provisions of Na and Gillespie's Agreement to Mediate are binding and enforceable, we apply the standard rules of contract interpretation. Maryland follows the objective approach to contract interpretation. *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86–87 (2010). This means that "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it to mean." *Id.* (cleaned up).[3] Under this standard, unless a term is ambiguous, the court gives effect to the language of the contract, as written. *Cochran v. Norkunas*, 398 Md. 1, 16 (2007).

In this case, the parties' Agreement to Mediate stated, in pertinent part:

> The parties and attorneys whose signatures appear below agree that all proceedings at their mediation conference and at any subsequent mediation conference**, including any statement made or document prepared by any party, attorney or other participant … are confidential** and shall not be disclosed in any subsequent proceeding or document … As used herein, the phrase "document prepared by any party, attorney or other participant" **shall not be deemed to apply to any settlement agreement that may result** from their mediation conference, and this agreement shall not apply to any such settlement agreement. **The parties agree not to subpoena the mediator or any documents prepared for mediation** … **In no event will a mediator voluntarily testify on behalf of a party**. The mediator will preserve and maintain the confidentiality of all written and oral communications made in connection with or during a mediation conference.

---

[3] *See supra* n. 2.

8

> No party shall be bound by anything said or done at the mediation conference unless a settlement is reached. If a settlement is reached, it shall be binding upon all parties to the agreement.

(Emphasis added). The express language in this one-page Agreement to Mediate is unambiguous and should be applied as written. Neither party to this appeal challenges the terms of the Agreement to Mediate as ambiguous, nor do they allege that the Agreement is unenforceable. Because the plain language of the parties' Agreement to Mediate represents a clear intent by all parties to maintain the confidentiality of their discussions, documents, and communications, the Agreement constitutes a binding, contractual confidentiality agreement. *B&P Enterprises v. Overland Equipment Co.*, 133 Md. App. 583, 604 (2000) ("The clear and unambiguous language of a written agreement controls."); *Hartford Acc. and Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291 (1996). We must therefore consider the admissibility of Na's proposed evidence in light of the Agreement to Mediate's express terms. *Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 447 (2005) ("Parties are held to the express terms of their contract.").

Na offers several examples of documentary and testimonial evidence that he contends would prove that the parties reached a binding settlement agreement at the close of mediation. *First*, Na subpoenaed the mediator to testify at the hearing, despite a line in the Agreement to Mediate stating "the parties agree not to subpoena the mediator." Even if the mediator wished to testify without a subpoena, the Agreement to Mediate forecloses

9

that option. It provides, "in no event will a mediator voluntarily testify on behalf of a party." *Second*, Na contends the parties' mediation counsel could testify as to what happened at mediation. Again, this proposal conflicts directly with the terms of the Agreement to Mediate, which prohibit an attorney from disclosing statements made in mediation at any subsequent proceeding. *Finally*, Na offers a written "terms sheet" as proof of the finalized terms of the parties' settlement agreement. This terms sheet, however, was prepared by Gillespie's attorney *during mediation* and supplemented with handwritten notes by Na's counsel. This document is confidential under the Agreement to Mediate, as well, because "any document prepared by any party, attorney or other participant … [is] confidential." In sum, all of Na's proposed evidence is inadmissible pursuant to the confidentiality provisions of the Agreement to Mediate.

Although the admission of any of the proffered evidence tending to establish the terms of the alleged settlement would violate the Agreement to Mediate, Na nevertheless contends that he is entitled to an evidentiary hearing. Na argues that our cases require that where parties dispute the existence of a binding settlement agreement, the trial court *must* hold an evidentiary hearing. He provides some cases in support of his argument, although none involve facts sufficiently similar to this case. *See David v. Warwell*, 86 Md. App. 306, 318 (1991) (holding that a plenary hearing is required to *enforce* a motion to enforce a settlement agreement if the parties contest the existence of an agreement) (emphasis added); *Litzenberg v. Litzenberg*, 57 Md. App. 303, 312 (1984) (the formality of a

10

proceeding to enforce a settlement agreement "depends upon the complexity of the dispute" and can range from a "summary" proceeding to a "plenary" proceeding). We are not persuaded. We do not think there is a rule that makes evidentiary hearings mandatory. Moreover, we hold that even if an evidentiary hearing is often appropriate when parties dispute the existence of a settlement agreement, on the facts of this particular case, such a hearing would be futile. An evidentiary hearing, therefore, is not required here.

The confidentiality provisions in the Agreement to Mediate render an evidentiary hearing on Na's Motion to Enforce purposeless. We have already demonstrated that *any* testimony or investigation by the trier of fact into the content of the alleged settlement terms would necessarily involve discussing the confidential communications between the parties and their attorneys during the mediation. At the circuit court's hearing on the Motion to Enforce, counsel for Na, himself, illustrated this issue. He argued "my view is there's a settlement and that settlement is enforceable and the *only way to determine what those terms are is to take evidence about the terms*." The Agreement to Mediate clearly and unambiguously prohibits disclosure of "any statement made or document prepared by any party, attorney or other participant" in the mediation. Therefore, even if Na were granted an evidentiary hearing to prove the existence of a settlement agreement, the evidence he wishes to present would be wholly inadmissible. *Smelkinson Sysco v. Harrell*, 162 Md. App. 437, 447 (2005). When we know that there will not be any relevant, admissible evidence, an evidentiary hearing is a fool's errand.

11

In the absence of any admissible evidence establishing the existence of a final, binding settlement agreement reached between the parties through mediation, the circuit court did not err in denying Na's Motion to Enforce.

## II.     Award of Attorney's Fees

Na next challenges the circuit court's order for Na to pay $85,000 towards Gillespie's attorney's fees. We review an award of attorney's fees in family law cases under an abuse of discretion standard. *Steinhoff v. Sommerfelt*, 144 Md. App. 463, 487 (2002). We will not disturb a circuit court's award of attorney's fees "unless a court's discretion was exercised arbitrarily or the judgment was clearly wrong." *Petrini v. Petrini*, 336 Md. 453, 468 (1994).

Section 12-103 of the Family Law ("FL") Article of the Maryland Code governs the award of counsel fees, and requires a court to consider three factors before awarding attorney's fees: "(1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding." FL § 12-103(b). To determine whether a court abused its discretion, we examine the court's application of the statutory factors to the unique facts of the case. *Petrini*, 336 Md. at 468 (citation omitted). Here, the court carefully compared the parties' respective financial situations and considered evidence of Na's substantially higher salary. Further, the court heard testimony that Gillespie's attorney's fees were fair and reasonable. We cannot say that the circuit court misapplied the statutory criteria or abused its discretion

in its award of attorney's fees to Gillespie. Thus, we affirm the court's award of attorney's fees.

### III.    Award of Child Custody

Finally, we address Na's challenge to the circuit court's award of primary physical custody to Gillespie and visitation rights to Na. Na argues that the trial court's "physical custody analysis is entirely self-contradictory" because it acknowledged that both parents are committed to and love the child, but then declined to award fifty-fifty custody.

We review a circuit court's award of child custody for whether the trial court abused its discretion and whether its findings of fact are clearly erroneous. *Viamonte v. Viamonte*, 131 Md. App. 151, 157 (2000); *Montgomery Cnty. Dept. of Social Servs. v. Sanders*, 38 Md. App. 406, 418 (1977). The clear error standard "is a deferential one, giving great weight to the [court's] finding of fact." *Viamonte*, 131 Md. App. at 157. It is well established in Maryland that the trial court, which has the opportunity to observe the parties and witnesses, hear testimony, and make credibility determinations, "is in a far better position than [the] appellate court … to weigh the evidence and determine what disposition will best promote the welfare of the minor." *Davis v. Davis*, 280 Md. 119, 125 (1977); *see also Innerbichler v. Innerbichler*, 132 Md. App. 207, 229 (2000); *Viamonte*, 131 Md. App. at 157.

In child custody actions, "the paramount concern is the best interest of the child." *Taylor v. Taylor*, 306 Md. 290, 303 (1986). Na's assumption that equal interest should

13

correlate to equal custody is misplaced here. Rather, "[f]ormula or computer solutions in child custody matters are impossible." *Id.* Courts have discretion to consider a variety of factors when making decisions regarding physical custody including the fitness of the parents, the relationship between the child and each parent, and the potential disruption to the child's life that joint physical custody might create. *Id.* at 304–09. While the trial court did recognize both parties' fitness as parents, it examined the geographic distance between the parties, the frequency of the child's interactions with each parent, and gave great weight to the fact that, at age two, the child "should not be away from her primary caregiver … the mother, for a week at a time." We see no clear error in the court's weighing of the testimony and evidence presented by the parties and the record reveals that the circuit court carefully considered the best interests of the child. Therefore, the circuit court did not abuse its discretion by awarding primary physical custody to Gillespie and visitation to Na. We affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

14