S. BROOKE PURLL, INC., t/a Purll Construction, Appellant,

v.

Patrick Darrell VAILES, Appellee.

No. 02–CV–1016.

District of Columbia Court of Appeals.

Argued April 20, 2004.

Decided May 27, 2004.

Phillip L. Felts, Bethesda, MD, for appellant.

Lucy R. Edwards, Washington, DC, for appellee.

Before STEADMAN, SCHWELB, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

This case concerns a dispute between S. Brooke Purll, Inc., t/a Purll Construction (the contractor), and Patrick Darrell Vailes (the owner) over the alleged breach of a contract for the renovation of a house belonging to the owner. The trial judge found that the owner had failed to perform certain initial demolition work within the time specified in paragraph 1 of the contract and to make a payment of $7,031.71 as required in paragraph 3. The judge concluded, however, that paragraph 5 of the contract, which the contractor described as a liquidated damages clause,

was unenforceable as a penalty, and she declined to award liquidated damages. The judge also rejected the contractor's alternative request for damages for lost profits, holding that these losses had not been adequately proved, and that the contractor had, *inter alia,* failed to mitigate his damages. The judge awarded the contractor a total of only $2,937.48, including counsel fees.[1] The contractor appeals,[2] arguing that the trial judge erred by striking down the liquidated damages clause.[3] We agree and reverse.

## I.

### THE TRIAL COURT PROCEEDINGS

This case began as a suit by the owner in the Small Claims and Conciliation Branch for return of the $5,000.00 deposit that he had paid to the contractor as an initial payment under the construction contract, which was dated January 30, 2001. The contractor counterclaimed for liquidated damages in the amount of $36,102.04, and also requested an award of counsel fees. He invoked paragraph 5 of the contract, which reads as follows:

The [owner] further agrees that if he shall cancel this Contract for any reason, whatsoever, then he shall pay to the

contractor as fixed and liquidated damages, without proof of loss, the sum of money equal to Thirty Five Percent (35%) of the full contract price hereinabove stated. Furthermore, if it becomes necessary for the Contractor to file suit or take other legal action on this Contract because of a breach on the part of the party of the second part, the party of the second part agrees to pay reasonable attorney fees and court costs incurred by the Contractor when enforcing the terms of this Contract.[4]

Paragraph 9 of the contract provided that the full contract price was to be $103,148.71.

A bench trial was held on May 20 and 21, 2002. At the trial, the judge made oral findings from the bench. She found, as we have previously noted, that the owner had committed two material breaches of the contract.[5] With respect to damages, however, the judge ruled as follows:

The Court finds that the liquidated damages requested and stated under the contract is actually a penalty and therefore cannot be awarded in total. First of all, the Court finds that it's a penalty, because it's not anywhere close to the

---

1. This amount was the result of a somewhat complex calculation. The court found that the contractor was entitled to recover $1,722.98 for expenses. Because the owner had made an initial payment of $5,000.00 to the contractor, the judge subtracted this amount which left the contractor owing the owner $3,277.02. However, the judge held that the contractor was entitled to recover $6,214.50 in counsel fees, and she awarded the contractor $2,937.48, which is $6,214.50 minus $3,277.02.

2. The case was initiated by the owner in the Small Claims and Conciliation Branch of the Superior Court's Civil Division. Appeals from that Branch are by leave of court, D.C.App. R. 6, and on September 12, 2002, this court granted leave to appeal.

3. The owner claimed in the trial court that it was the contractor who was in breach of the contract, and he maintains this position on appeal. The owner did not, however, cross-appeal.

4. We note that, by its terms, the liquidation clause applies if the owner "shall *cancel* this contract for any reason whatsoever." The trial court found that the owner breached the contract, which does not necessarily mean that he "cancel[led]" it. Neither party raised this issue either in the trial court or on appeal, and we do not address it.

5. The judge also found that the contractor was not in breach.

actual damages incurred and that the—if there were lost profits, it would not have been that difficult to present sufficient evidence to the Court on that issue.

The Court finds that the lost profits and the amount requested by the defendant are not supported by sufficient evidence in the record an[d] that the plaintiff did not prove by a preponderance of the evidence that the amount stated in its exhibits were supported by sufficient evidence.

And that therefore, the Court is left in a position to guess and speculate about exactly how much lost profit the defendant actually incurred as a result of the plaintiff's breach.

The Court also recognizes and there was no evidence that, of course, when there is this issue of lost profits, there is also a duty of mitigation. That issue, of course, was not—there was no evidence, of course, in terms of what mitigation efforts were taken or not taken.

Therefore, the Court does not award any lost profits to the defendant. As stated before, the defendant did not meet its burden of proof by a preponderance of the evidence and there was no[t] sufficient evidence for the Court to determine that the amount—that the defendant was requesting was a reasonable amount.

On appeal, the contractor challenges the judge's invalidation of the liquidated damages claim and, in the alternative, he contends that his proof of lost profits was sufficient and, in fact, uncontradicted.

## II.

### LEGAL ANALYSIS

A century and a half ago, the New York Court of Appeals lamented that even "[t]he ablest judges have declared that they felt themselves embarrassed in ascertaining the principle upon which the decisions [distinguishing unenforceable penalties from valid liquidated damages clauses] were founded." *Cotheal v. Talmage,* 9 N.Y. 551, 553 (1854). In more recent times, the issue has been raised whether the rule prohibiting penalty clauses in contracts between competent parties has any justification at all in light of general principles of freedom of contract. The Reporter for the Restatement (Second) of Contracts has written:

> With the development of a doctrine of unconscionability capable of coping with abusive stipulated damage provisions in the same way as other abusive provisions, . . . it has become increasingly difficult to justify the peculiar historical distinction between liquidated damages and penalties. Today the trend favors freedom of contract through the enforcement of stipulated damage provisions as long as they do not clearly disregard the principle of compensation.

E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS § 12.18, at pp. 303–04 (3d ed. 2004) (footnote omitted).[6]

In *Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 367 (D.C.1984), this court explicated the utility of liquidated damage clauses:

> Upholding the liquidated damages provision in the present case is consistent with one of the main purposes of such a clause: to simplify the resolution of a breach of contract dispute. In addition to giving the parties an opportunity to resolve the damages question without resorting to litigation, . . . a liquidated damages clause allows the parties to fix

---

**6.** The same commentator notes that the "hostile attitude toward penalties is peculiar to common law countries and is not generally shared by other legal systems."

the measure of damages at the outset, before a breach even occurs. Such a provision is particularly appropriate when the parties enter into a contract like the one at bar, where the damages to be ascertained are uncertain in amount and cannot be easily ascertained.

(Citation and internal quotation marks omitted.)

This court's jurisprudence has been tolerant of liquidated damages clauses unless they are demonstrably unreasonable. We have stated that "as long as [a] liquidated sum bears [a] reasonable relation to [the] damages foreseeable at [the] time of contracting [the] clause is enforceable." *Christacos v. Blackie's House of Beef,* 583 A.2d 191, 197 (D.C.1990) (citing *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 327 (D.C. 1982)). As we elaborated in *Burns,*

> [i]t is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract. Such a bargained-for liquidated damages clause is valid unless it is found to constitute a penalty. *Order of AHEPA v. Travel Consultants, Inc.,* D.C.App., 367 A.2d 119 (1976). One criterion this court has used to determine whether a provision should be construed as a penalty is that
>
> > damages stipulated in advance should not be more than those which at the time of the execution of the contract can be reasonably expected from its future breach, and agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced. [*AHEPA, supra* at 126 (quoting *Davy v. Crawford,* 79 U.S.App. D.C. 375, 376, 147 F.2d 574, 575 (1945)).]

■ Although the courts do not all speak with one voice on the subject, *see,* *e.g., Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1290 (7th Cir.1985) ("Illinois courts resolve doubtful cases in favor of classification as a penalty"); the "prevailing rule is that the party challenging the enforceability of a liquidated damages clause has the burden of proving that it is a penalty." *Honey Dew Assocs. v. M & K Food Corp.,* 241 F.3d 23, 27 (1st Cir.2001); *see also MetLife Capital Fin. Corp. v. Washington Ave. Assocs.,* 159 N.J. 484, 732 A.2d 493, 499–500 (1999) ("liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable, and the party challenging the clause bears the burden of proving its unreasonableness"); *Wassenaar v. Panos,* 111 Wis.2d 518, 331 N.W.2d 357, 361 (1983) ("[p]lacing the burden of proof on the challenger is consistent with giving the nonbreaching party the advantage inherent in stipulated damage clauses"); *Haromy v. Sawyer,* 98 Nev. 544, 654 P.2d 1022, 1023 (1982) ("[g]enerally, liquidated damage provisions are *prima facie* valid ... [and] the party challenging the provision must establish that its application amounts to a penalty"); JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 14.13, at 593–94 (4th ed. 1998) (footnote omitted) ("It is generally held that the burden of proof that the agreed damages clause is disproportionate to the foreseeable (or actual) harm is on the [party challenging enforcement of the clause]."). Although this court has not heretofore expressly decided which party bears the burden of proof on this issue, the language we have quoted from *Christacos,* 583 A.2d at 197, is consistent with the prevailing rule. We now explicitly adopt that rule, and we hold that the burden was on the owner to establish that the liquidated damage clause was a penalty.

■ With the burden of proof so assigned, we are unable to agree with the

trial judge's invalidation of the clause. The judge was of the opinion that the clause was a penalty because the damages claimed were not "anywhere close" to the contractor's "out of pocket loss" and because "if there were lost profits, it would not have been that difficult to present sufficient evidence to the [c]ourt on that issue." It was not, however, incumbent upon the contractor to prove with precision his lost profits;[7] rather, the burden was *on the owner* to show that the liquidated damage clause was disproportionate to the contractor's anticipated damages in the event of a breach. The face of the contract established that the full contract price was $103,148.71. The contractor testified without contradiction that two thirds of the contract price represented materials and labor and one third represented his profit.[8] The contractor explained that he consulted the Ames Construction Guide for the D.C. Metropolitan Area, which was customarily used in the industry for pricing construction jobs. This testimony was uncontradicted, and the trial judge suggested no reason for not crediting it, nor do we know of any such reason. *See Belcon, Inc. v. District of Columbia Water & Sewer Auth.*, 826 A.2d 380, 386–87 (D.C. 2003) (addressing weight to be presumptively accorded to undisputed testimony).[9] Moreover, an architect employed by the owner who was experienced in pricing construction prepared a budget for the owner which provided for a cost of $100,000.00 of which 25% represented the contractor's profit.[10]

■ The judge also appeared to believe that the liquidated damages sought by the contractor bore no relation to lost profits because there was no evidence that the contractor had attempted to mitigate his damages. But "[t]he failure to mitigate damages is an affirmative defense and [the breaching party] has the burden of showing the absence of reasonable efforts to mitigate." *Norris v. Green*, 656 A.2d 282, 287 (D.C.1995); *see also Howard Univ. v. Lacy*, 828 A.2d 733, 739 n. 8 (D.C.2003). The owner did not present failure to mitigate as an affirmative defense, and the only evidence on the subject was the following uncontradicted testimony by the contractor:

Q: With regard to the profit that you alleged that you lost and the stipulated amount in the contract, did you have sufficient resources to perform other jobs and still do this job?

A: Yes, sir.

Q: So this is real money to you you've lost?

A: Yes, sir. That's a lot of work there.

The contractor also testified that his company does between forty and fifty house

---

7. The clause states that in case of cancellation of the contract, the contractor shall be entitled to payment of 35% of the full contract price *"without proof of loss."* Moreover, the contractor was not required "to prove damages to a degree of mathematical certainty, ... [so long as he offered] some evidence which [would have] allow[ed] the trier of fact to make a reasoned judgment." *Morgan v. Psychiatric Inst. of Washington*, 692 A.2d 417, 426 (D.C.1997); *see also Hawthorne v. Canavan*, 756 A.2d 397, 401 (D.C.2000) (quoting *Morgan*). We have no doubt that the contractor satisfied this standard.

8. The alert reader will note that under the terms of paragraph 5 of the contract, liquidated damages shall be 35% of the contract price, not one third.

9. It is noteworthy that on disputed factual issues relating to which party was in breach of the contract, the trial judge expressly credited the testimony of the contractor.

10. According to the architect, a different construction company had bid $124,000.00 on the job, which was a price more than 20% higher than the full contract price agreed to by the contractor.

renovations a year, and there is no indication in the record that the owner's breach provided the contractor with the opportunity to do additional work that the contractor could not otherwise have performed. Under these circumstances, we cannot agree with the trial judge's decision to invalidate the liquidated damages clause as a penalty.

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*