**Joel D. JOSEPH, Appellant**

v.

**CUNEO LAW GROUP, P.C.,
and Jonathan Watson
Cuneo, Appellees.**

**No. 09–7151.**

United States Court of Appeals,
District of Columbia Circuit.

June 17, 2011.

Rehearing En Banc Denied July 21, 2011.

Jonathan Watson Cuneo, David Wallace Stanley, Esquire, Cuneo Gilbert & Laduca, LLP, Jacob A. Stein, Esquire, Stein, Mitchell & Muse LLP, Washington, DC, for Appellees.

Joel D. Joseph, Beverly Hills, CA, pro se.

Before: SENTELLE, Chief Judge; GRIFFITH, Circuit Judge; and SILBERMAN, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

This appeal from a judgment of the United States District Court for the District of Columbia was considered on the record and on the briefs of counsel. *See* FED. R.APP. P. 34(a)(2); D.C.CIR. R. 34(j). We have given the issues full consideration and have determined that they do not warrant a published opinion. *See* D.C.CIR. RULE 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the district court be affirmed.

Jonathan Cuneo and the Cuneo Law Group (collectively, "Cuneo") filed suit in the district court seeking a declaratory judgment that their former staff attorney, Joel Joseph, breached a settlement agreement in which he promised not to "interfere" with cases he had worked on while employed by Cuneo. The district court granted summary judgment in favor of Cuneo, and Joseph now appeals.

Joseph worked on the early stages of three contingency-fee cases while employed by Cuneo: the *Gold Train* case (*Rosner, et al. v. United States*, No. 01–1859 (S.D.Fla.)), the *Leatherman* case (*Colgan v. Leatherman Tool Group, Inc.*, No. BC 247899 (L.A.Cty.Super.Ct.)), and the *Kwikset* case (*Benson v. Kwikset Corp.*, No. 00C01275 (Orange Cty.Super.Ct.)). After leaving the firm in 2001,

while the cases were still pending, he brought claims against Cuneo for breach of his employment contract, unjust enrichment, and conversion. Among other things, he sought "100% of the legal fees generated from the cases." Am. Compl. 8, *Joseph v. Cuneo Law Group, P.C.*, No. 1:01CV01755 (Oct. 3, 2001). He also contacted Cuneo's co-counsel and filed liens for fees in the pending cases. Joseph and Cuneo reached a settlement in March 2002. As part of the settlement agreement, Cuneo agreed to pay Joseph $40,000, as well as twenty percent of whatever contingency fees the firm might receive from the cases Joseph had worked on. In exchange, Joseph agreed to release all claims against Cuneo, "not file any independent fee applications," and "cooperate fully with the Cuneo Law Group reasonably in the prosecution of these cases." *Cuneo Law Group, et al. v. Joseph*, 669 F.Supp.2d 99, 119 (D.D.C.2009). The settlement agreement further provided that Joseph "shall make no attempt to interfere with the pending cases or cases that follow, nor shall he attempt to file liens or notices of claim, or correspond with the litigants. If he does he has breached the agreement and waives his percentages." *Id.*

After Joseph's departure, Cuneo and his co-counsel, Samuel Dubbin, eventually obtained a favorable settlement in the *Gold Train* case. Cuneo received over one million dollars in contingency fees, and duly paid twenty percent to Joseph. Joseph then wrote to Dubbin, demanding twenty percent of Dubbin's portion of the settlement. After learning of this demand, Cuneo contacted Joseph and requested that he stop interfering with the case. Joseph did not desist, instead filing a lawsuit against Dubbin.

In February 2008, Cuneo received over two million dollars in contingency fees for settlement of the *Leatherman* case. Cu-

neo promptly filed this lawsuit seeking a declaratory judgment that Joseph had waived his right to a fee percentage in the *Leatherman* case because he breached the settlement agreement when he sued Dubbin over the *Gold Train* case. The district court agreed and granted summary judgment for Cuneo.

We affirm the district court's finding that Joseph breached the settlement agreement when he contacted and ultimately sued Cuneo's co-counsel. Joseph's lawsuit threatened to undermine Cuneo's fee-sharing arrangement with Dubbin and damage Cuneo's reputation as a reliable litigating partner. Avoiding such harms was exactly what Cuneo bargained for upon agreeing to pay Joseph a substantial sum of money to walk away from the cases he had worked on. Joseph's breach was material because it "[went] to the essence and frustrate[d] substantially the purpose for which the [settlement] was agreed to." *Draim v. Virtual Geosatellite Holdings, Inc.*, 522 F.3d 452, 454–55 (D.C.Cir.2008) (internal quotation marks omitted).

We reject Joseph's argument that the settlement agreement no longer applied after the *Gold Train* case settled and was no longer "pending." Given the context in which the agreement was reached, referring to "the pending cases" was simply a shorthand way of identifying the cases that Joseph had worked on. The agreement's purpose was to put Joseph's fee claims to rest by specifying that he was entitled to twenty percent of whatever fees Cuneo might receive, not to merely put off Joseph's suit until the cases settled. The notion that Joseph would be free to seek an additional fee share after settlement is beyond what any "reasonable person in the position of the parties would have thought" upon signing the agreement. *Debnam v. Crane Co.*, 976 A.2d 193, 198 (D.C.2009).

We further reject Joseph's argument that the settlement agreement's fee-waiver provision is an "unreasonable liquidated damages penalty." Appellant's Br. 17. We are highly suspicious of attempts to invalidate liquidated damages clauses that are "the product of fair arm's length bargaining, particularly between sophisticated parties." *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 724 (D.C. 2003). Joseph bears the burden of showing that the fee-waiver provision "was disproportionate to the . . . anticipated damages in the event of a breach." *S. Brooke Purll, Inc. v. Vailes*, 850 A.2d 1135, 1139 (D.C.2004). He cannot make that showing here because, at the time the agreement was signed, it was highly uncertain what Joseph's fee share would be and how much damage might be caused by a breach. Joseph could have broken the non-interference agreement in a number of different ways, possibly resulting in Cuneo losing the pending cases, suffering reputational harm, incurring additional litigation costs, and compromising his relationships with co-counsel. Such harms were difficult to predict and quantify, and we cannot say that they appeared disproportionate to the fees Joseph stood to forfeit, which ranged from nothing (if Cuneo lost the pending cases), to millions of dollars (if Cuneo won large jury awards). In the face of such uncertainty, it was reasonable for the parties to adopt a liquidated damages clause specifying a clear damages rule in the event of a breach. The parties agreed that if Joseph interfered with the ongoing cases, he would forfeit his share of the fees in those cases. Now, having broken his promise of non-interference, Joseph has no grounds to protest the remedy he agreed to.

The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for re-

hearing *en banc.* *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41(a)(1).