# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 11, 2017          Decided October 13, 2017

No. 16-7103

ANTOINETTE BURNS, D.O.,
APPELLANT

v.

MATTHEW D. LEVY, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00898)

---

*J. Michael Hannon* argued the cause and filed the briefs for appellant.

*Joseph E. Schuler* argued the cause and filed the briefs for appellees.

Before: MILLETT, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  Memo to graduate students:  When multiple institutions are involved in a research fellowship, be sure that every one on which you are relying is literally on the same page of an agreement.

Lieutenant Colonel Antoinette Burns (Major Burns, at the time) had a falling out with Dr. Matthew Levy and others who were overseeing her postgraduate clinical research fellowship at Georgetown University Medical Center ("the University") and MedStar Georgetown University Hospital ("the Hospital"). Burns believed that she had patched things up and that all parties had agreed to her voluntary withdrawal.  When the Hospital reported to Burns's employer, the U.S. Air Force, that she had been terminated for cause, she brought this diversity action for breach of contract, defamation, and tortious interference with a prospective economic advantage.

The district court granted summary judgment in the defendants' favor on all counts.  On the contract counts, it ruled that the University did not breach its agreements with Burns, and that because the Hospital was not a party to any agreement between Burns and the University, it was not bound to observe the notice and other procedures afforded by Burns's agreement with the University.  *Burns v. Georgetown Univ. Med. Ctr.*, Civil No. 13-898, 2016 WL 4275585, at *8–12  (D.D.C. Aug. 12, 2016).  On the defamation counts, the district court ruled that the common interest privilege shielded Levy and the Hospital from liability for their report to the Air Force of their critical assessment and dismissal of Burns.  *Id*. at *14–15.  The district court discarded Burns's intentional interference claim as too speculative.  *Id*. at *16.

Because there is a genuine factual dispute as to whether Levy and the Hospital gave Burns's employer false information, the district court incorrectly granted summary judgment on the defamation claims.  We therefore reverse and

remand on those claims. We affirm the district court's grant of summary judgment on the other claims, for the reasons the district court identified except as noted.

* * *

Four agreements form the basis of Burns's suit. The Air Force and the University signed a Medical Residency/Fellowship Agreement on June 8 and 9, 2011 (the "AF-University Agreement"), providing that Burns would continue to be employed by the Air Force during her fellowship and would draw no salary from the University, but that the University would make arrangements to cover Burns's medical malpractice insurance. The agreement gave either party the right to terminate on thirty days' notice.

Burns and the University signed a Research Fellowship Agreement in late August 2011 (the "Burns-University Agreement"), an agreement that lies at the heart of Burns's case. It required Burns to meet research and educational requirements for the University and render clinical services through the Hospital. In return the University promised to provide research training and a suitable environment for educational research. The agreement allowed the University to terminate Burns for cause, subject (unless she was intentionally or grossly delinquent in her conduct) to notice and a right to appeal under the University's grievance procedure.

The University and the Hospital signed their own Letter of Agreement on August 10 and 11, 2011 (the "University-Hospital Agreement"). The agreement stated that as a fellow, Burns would provide clinical services and instruction to students through the Hospital. The Hospital in turn gained the right to control Burns's manner and method of performance, subject to the understanding that Burns was an employee of the Air Force, not of the Hospital or the University. The agreement

gave either party the right to terminate on thirty days' notice and provided for instant termination if, in relevant part, the relationship between Burns and the University terminated for any reason.

Finally, Burns and the Hospital signed a Professional Services Agreement on August 1, 2011 (the "Burns-Hospital Agreement"). In consideration of the Hospital's signing the University-Hospital Agreement, Burns promised to provide patient care as reasonably requested by the Hospital, to abide by ethical and professional guidelines, and to keep her paperwork current. Burns also agreed to abide by the University-Hospital Agreement (to which she was not a signatory). The agreement had nothing to say about possible termination.

To sum up, the University and the Hospital had an agreement with each other (and the University had one with the Air Force), and Burns had separate agreements with each of the two Georgetown institutions.

Burns began her fellowship in August 2011. By April 2012 her relationship with Levy, her supervisor at the Hospital, had broken down. Burns claims that Hospital personnel disrespected her and over-assigned her clinical duties, thwarting the research-intensive purposes of the fellowship. Hospital personnel lay the blame on Burns's refusal to take leadership initiative at the clinic and her occasional unexcused absences. Whatever the causes of the discord, Levy and Jamie Padmore, the vice president of academic affairs at the Hospital, phoned Burns's Air Force supervisor on April 2, 2012, to say that Burns's fellowship was being terminated. The summary judgment record is unclear whether that conversation referenced the University or the Hospital as the entity deciding to terminate Burns. At a meeting with Burns on April 3, Levy and David Nelson, chair of the University's pediatrics

department, handed Burns a letter, on University letterhead, dismissing her from the fellowship for gross delinquency, citing the Burns-University Agreement's provision for immediate termination in such a case. All three individuals involved in these relations with Burns—Levy, Nelson, and Padmore—had appointments at both the University and the Hospital.

In early December 2012, however, Burns and Nelson negotiated an agreement for Burns's voluntary withdrawal from the fellowship rather than involuntary termination. (One aspect of the fellowship, namely, coursework towards earning a master's degree in public health at George Washington University, continued independently of the Georgetown relationship.) Burns sent Nelson a letter, backdated to April 3, the date of the original termination meeting, requesting release from the fellowship. In a letter dated December 11, 2012, on University letterhead, Nelson "confirm[ed]" that on April 3 Burns had requested release from her fellowship agreement, that her request was granted, and that therefore the Burns-University Agreement terminated effective on the date of that request—said by the letter to have occurred on April 3. Joint Appendix ("J.A.") 173.

On December 12, 2012, the Air Force requested a final "summative assessment" of Burns's performance, a routine request following the end of an employee's external fellowship. Padmore wrote to the Air Force (on Hospital letterhead) that Burns had been dismissed from the Hospital on April 3 and that "[f]ollowing her dismissal from the Pediatrics Fellowship at the Hospital, Dr. Burns voluntarily resigned from her Research Fellowship Agreement with [the University]." J.A. 443.

In February 2013, Levy sent his final summative assessment to the Air Force as requested. The assessment reported that "Dr. Burns completed 8 months of the fellowship

program and was subsequently dismissed for poor academic performance on April 3, 2012." J.A. 430. Levy's assessment then evaluated Burns's performance according to six "core competencies." Along with the assessment, Levy sent a signed Verification of Graduate Medical Education Training form. Next to the question, "Was [Burns] ever subject to any disciplinary action, such as admonition, reprimand, or suspension, or termination?" Levy checked "yes." J.A. 255. This suit was filed soon after.

* * *

Burns's theory is that she accepted one fellowship with multiple parts, including academic research, coursework, clinical education, and classroom instruction. She argues that she resigned this one fellowship. Levy's February 2013 report that she was fired was thus a breach of contract, since termination procedures were not followed, and defamation and tortious interference, since Levy conveyed the false report of termination to her employer. The view urged by the defendants, and compatible with the district court's opinion, is that Burns had separate agreements with the University and the Hospital, and although she resigned from the former, she was fired by the latter. We agree that the contracts unambiguously distinguish between the rights and duties of the University and the Hospital and do not support Burns's claims for breach of contract. But there is a factual issue as to whether the Hospital had the authority to dismiss Burns, and whether Hospital personnel knew, when they made their reports to the Air Force in December 2012 and February 2013, that they lacked that power. If resolved in Burns's favor, these factual issues would support her claims to relief for defamation and preclude summary judgment. We therefore remand those claims to the district court for further proceedings.

*Breach of Contract*. Burns's single-fellowship theory is plausible as a broad-brush colloquial description of her activities at the University and Hospital. Her supervisors, including Nelson and Levy, were both academic faculty at the University and licensed clinicians at the Hospital, and as the brief recitation above indicates, they were accustomed to using one another's letterhead interchangeably. Indeed, the interchangeable letterhead featured not only at Burns's termination, but also when the fellowship relationship was offered. Her original offer letter came on Hospital letterhead, with an effective date of July 1, 2011. When the program date was changed to August 1, 2011, a new offer letter was sent on University letterhead. The separation of the two institutions was due not to a difference in academic mission, but only to the Hospital's distinctive financial characteristics, something of no apparent relevance to Burns's unpaid fellowship.

But this seamless appearance was not recorded in the contracts, and the District of Columbia "adheres to an 'objective' law of contracts." *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009) (citation omitted). "A court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract . . . and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp*., 944 A.2d 1055, 1064 (D.C. 2008) (internal quotation marks and citation omitted; alteration in original). Burns makes several claims based on her single-fellowship contract theory. The unambiguous words of the contracts at issue are fatal to all of her arguments.

First, Burns argues that, assuming she was a third-party beneficiary to the Air Force Agreement with the University, she was entitled to that agreement's thirty-day notice provision before termination. But the AF-University Agreement explicitly recognized that the Hospital was not a party to the

agreement. The University promised the Air Force that it would subsequently contract with the Hospital and incorporate certain terms, including insurance and indemnification terms, in that future contract. Those terms did not include anything about the nature of the fellowship or the process of termination. The Hospital could not, in reporting that Burns had been dismissed with cause, breach an agreement that didn't bind it. As for the University, the district court correctly noted that the University did not terminate Burns, who withdrew, and so could not have breached the notice provision of either the Burns-University Agreement or of the AF-University Agreement (even if she was in any way a third-party beneficiary thereof).

Next, Burns argues that all the agreements taken together add up into a whole unified fellowship agreement between her and what she calls the "Georgetown Partners." Appellant's Br. 4. She cites authority for the uncontroversial proposition that "a valid contract can be spelled out of multiple papers, some unsigned, if they are referred to in a signed document and thus become incorporated by reference." *Superior Oil Co. v. Udall*, 409 F.2d 1115, 1121 (D.C. Cir. 1969). The trouble for Burns is that the Hospital's agreements do not incorporate the University's duties by reference. Most critically, the University-Hospital Agreement, the only agreement which could tether the Hospital to Burns's claims, contains not just one but two integration clauses (§§ 5.4, 5.13), as well as a clause disaffirming any third-party reliance (§ 5.11). J.A. 168–69. Burns was not a party to this agreement, and the Hospital did not agree to follow the University's procedures for termination. By reporting that Burns was dismissed for cause, the Hospital was not violating any agreement with Burns, and its agreement with the University does not give Burns third-party beneficiary rights under that agreement. As for the University, once again the district court correctly concluded that the University did not breach its agreement with Burns.

Burns withdrew from the Burns-University Agreement, and the University retracted its termination letter. The University did not terminate Burns or report Burns as terminated, so Burns cannot recover on a breach of contract theory from the University.

Third, Burns argues that all the parties agreed to a settlement in December 2012 whereby she would resign her fellowship rather than contest her dismissal in a breach of contract suit. Burns insists that, instead of stating a separate claim for breach of a settlement agreement, she is electing to revive the contracts she rescinded and sue for breach of the original agreements. See *The Cuneo Law Firm Grp., P.C. v. Joseph*, 669 F.Supp.2d 99, 119 (D.D.C. 2009), *aff'd sub nom., Joseph v. Cuneo Law Grp., P.C.*, 428 F.App'x 6 (D.C. Cir. 2011). But for the same reasons stated above, Burns's revival theory does not get her where she wants to go. No matter how revived, no contract to which Burns is a party gives her rights against the Hospital (at least not rights relevant to her claims here) or rights breached by the University. The Hospital and its personnel are not parties to any written agreement with Burns that would entitle her to notice and due process before termination. At most, the Hospital may have breached the notice requirement of *its* agreement with the University, but as explained just above, that agreement affords Burns no rights. The clear language of the contracts bars Burns's contract claims.

Finally, Burns argues for the first time on appeal that her provisional staff appointment to the Hospital as a fellow created a contract based on the Hospital's bylaws. We see no basis for departing from our usual refusal to review claims that were not raised with the district court in the first instance. See *Keepseagle v. Perdue*, 856 F.3d 1039, 1052–53 (D.C. Cir. 2017).

*Defamation*. The district court correctly ruled that Burns had separate agreements with separate entities providing her fellowship. But although Burns could, contractually, have resigned from the University while being fired from the Hospital, that is not necessarily what happened. If she was not fired by the Hospital, her claim that it defamed her, by its telling the Air Force she had been, may have legs. The record reveals enough of a dispute of fact to preclude summary judgment.

The University-Hospital Agreement gave the Hospital the duty to accommodate Burns's clinical fellowship and the right to supervise her and control her performance. Per the agreement, the Hospital's rights and duties terminated immediately if the University terminated its own fellowship agreement with Burns (the Burns-University Agreement). Thus, if the University and Burns voluntarily terminated their agreement *first*, the Hospital could not have fired Burns afterwards, because it would by then have lost any right to supervise her fellowship. In that circumstance, a report that Burns was dismissed for cause from the Hospital, when the Hospital had no power to dismiss her, would be a falsehood.

The district court never addressed Burns's claim that the Hospital's report of her firing was false. Instead, it focused on Levy's final "summative assessment" and found that the language used there was not "'so excessive, intemperate, unreasonable, and abusive'" to rise to the level of "malice"— which, the parties agree, would trigger a recognized exception to the common interest privilege otherwise shielding the Hospital's communications to the Air Force. *Burns*, 2016 WL 4275585, at *15 (quoting *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990)). But Padmore's December 2012 letter, the February 2013 Verification Form, and Levy's final summative assessment all contain the positive declaration that Burns was dismissed for cause. No matter how temperate the language, the common interest privilege "exists only if the publisher

believes, with reasonable grounds, that the statement is true." *Moss*, 580 A.2d at 1025; see also *Rosen v. Am. Israel Pub. Affairs Committee, Inc.*, 41 A.3d 1250, 1256 (D.C. 2012).

Whether the statement was false, and whether Hospital personnel knew or should have known of its falsity, is disputed on the present record. The Hospital considers itself to have fired Burns on April 3, 2012, independently of and prior to the University's agreement to let Burns withdraw. But in Burns's favor, the Hospital never communicated its termination to Burns except in an April 3 letter on University letterhead citing a University (and not a Hospital) agreement, a letter that the University retracted in its letter of December 11. Apparently Padmore and Levy also drafted a termination letter on Hospital letterhead on or about December 12, which they backdated to April 3, substantially repeating the University's (since withdrawn) termination letter of April 3 but omitting any citation to the Burns-University Agreement or its termination procedures. The parties agree that this backdated termination letter was never sent out, either to the Air Force or to Burns.

Considering the University's stated intent to treat Burns's withdrawal effective as of April 3, a reasonable jury could decide that Burns terminated her University fellowship agreement on April 3 or December 11, and that either termination was prior to the Hospital's attempt to dismiss her. Such a sequence would render that attempt ineffectual; the Hospital's accounts of Burns's dismissal would therefore be false.

As for whether Levy or other Hospital personnel knew that they lacked the authority to fire Burns, a reasonable jury could find that they did. In support of such a finding are the December 12 attempts by Padmore and Levy to manufacture an artificial record of Burns's dismissal. Of course, a reasonable jury could also find that the Hospital did in fact fire

Burns first, or that Levy and Padmore acted in good faith in backdating documents.

The Hospital argues that even if the common interest privilege does not shield its communications with the Air Force, the District of Columbia's statutory privilege for peer review materials does. Burns argues that the peer review privilege operates exactly like the common interest privilege, so that the analysis of malice remains the same. Burns is not quite correct. While the common interest privilege accepts a reckless disregard for falsity as its standard for malice, see *Moss*, 580 A.2d at 1024, the peer review statute creates an exception only if "the person or entity providing the information *knew* the information was false." D.C. Code § 44-802 (emphasis added). If the peer review privilege applies, Burns could not sustain her claim against the Hospital for *negligent* defamation; negligence as to the truth of the statement does not meet the knowledge exception to the peer review privilege. The peer review statute's stringent concept of malice wouldn't beat Burns's claim for intentional defamation but plainly would require her to shoulder a heavier burden at trial.

It is not clear that the peer review statute covers Levy and the Hospital's communications with the Air Force, however. The statute protects communications to a "peer review body," defined in relevant part as a "health-care facility, agency, group practice or health professional association." D.C. Code § 44-802, 44-801(6). Because it granted summary judgment under the common interest privilege, the district court did not reach the question whether Burns's Air Force supervisors fall under the definition of a peer review body. From the record, her supervisors appear not to be officers or employees of a health care facility, but of a military agency in charge of a broad array of civilian education programs. Cf. *Ervin v. Howard University*, 445 F.Supp.2d 23, 28 (D.D.C. 2006). But the

record is not conclusive. We therefore remand this issue to the district court, with the guidance that even if the peer review statute does apply, it does not entirely dispose of Burns's *intentional* defamation claim, although it would alter the elements necessary for her to prevail.

The Hospital also argues that the peer review statute bars the discovery and admission of the verification form and final summative assessment, making Burns's claim unprovable. As to discovery, the point is moot, as the challenged documents are already in the record. As to admissibility at trial, we find that even if the statute applies, Burns falls into the statutory exception for health professionals challenging an adverse employment action by the peer reviewing body. D.C. Code § 44-805(c).

Because a reasonable jury could find (1) that the reports by Levy and the Hospital that Burns was fired were false statements, and (2) that the statements were made with the requisite knowledge or notice of their falsity (depending on the applicability of the peer review statute), we reverse the district court on Burns's defamation claims and remand for further proceedings.

*Tortious Interference.* Burns argues that the Hospital's adverse reporting reduced her chances of a promotion within the Air Force to "slim to none." Appellant's Br. 53. But Burns has in fact been promoted from major to lieutenant colonel since her aborted fellowship, and a required element of an intentional interference claim is a termination of a business expectancy causing damage. See *Modis v. InfoTran Sys., Inc.*, 893 F.Supp.2d 237, 241 (D.D.C. 2012). Burns relies for such an expectancy on the Air Force's rule that she must either be promoted to full colonel within 28 years of her first commission or leave the Air Force's employ. Burns was commissioned in 1995, meaning her up-or-out promotion must take place no

later than 2023.  The district court rightly concluded that a possible promotion within the next six years (ten from the last alleged tortious act) is too speculative to support a claim for damages.  See, e.g., *Robertson v. Cartinhour*, 867 F.Supp.2d 37, 60 (D.D.C. 2012).  We affirm the district court's judgment on this count.

\* \* \*

The judgment of the district court is

*Affirmed in part, reversed in part, and remanded.*